[No. E001738. Fourth Dist., Div. Two. Apr. 22, 1987.]

JOSEPH BIANCHI et al., Plaintiffs and Respondents, v.
WESTFIELD INSURANCE COMPANY, Defendant and Appellant.

COUNSEL

Hartman, Morton & Schlegel and Richard J. Schlegel for Defendant and Appellant.

Parker, Stanbury, McGee, Babcock & Combs, Stephen H. Osborn and Graham H. Baldwin for Plaintiffs and Respondents.

OPINION

CAMPBELL, P. J.—This case presents the novel question of when land is "vacant" for insurance purposes. The losing defendant insurance company appeals from a judgment in a declaratory action holding it liable for coverage

under a "vacant land" inclusion in a homeowner's policy. We hold that the land in question was not vacant and therefore reverse the judgment.

## FACTS

Plaintiff Joseph Bianchi built a dam on a large parcel of land he owned in Reche Canyon, in Riverside County. As constructed, the earth and stone dam stood a wedge-shaped 30 feet at its base and about 150 feet long at its top. Its thickness tapered from a base width of 40 feet to a 12-foot road at its top. The dam impounded a reservoir estimated at 2 million gallons.

Bianchi secured a comprehensive insurance policy from coplaintiff the Ohio Casualty Insurance Company (hereinafter Ohio) for his personal liability for bodily injury or property damage occurring on the Reche Canyon parcel.

Bianchi also obtained a homeowner's insurance policy from defendant Westfield Insurance Company (hereinafter Westfield) for his residence in Orange County. That policy declared its coverage to extend to "insured premises," defined as: "(1)   the residence premises described in the Declarations of this policy; and [¶] (2) . . . [¶] (a) any other residence premises specifically named in this policy; [¶] (b) any residence premises acquired by the Named Insured or his spouse during the term of this policy; [¶] (c) any residence premises which are not owned by any Insured but where an Insured may be temporarily residing; [¶] (d) *vacant land, other than farm land, owned by or rented to any Insured*; and [¶] (e) individual or family cemetery plots or burial vaults." (Italics added.)

On March 6, 1978, the water of heavy rains surmounted and broke the dam, which structure had been leaking near its base for more than a week. Inundated property owners presented damage claims to Bianchi and Ohio (hereinafter plaintiffs) and subsequently sued. (McDonald v. Bianchi (Super. Ct. Riverside County, 1983, No. 129916), hereinafter, the underlying action.)

Plaintiffs filed this action to establish defendant Westfield's liability for the claims and judgment later entered in the underlying action.

Evidence at trial developed the following facts: Bianchi bought the parcel in 1971 while planning to build a community for developmentally disabled children. At that time, a dilapidated house, a second small structure, a water system, and an electrical line all stood on the property. In 1972, Bianchi demolished the house and the structure, and buried their debris.

Also in 1972, Bianchi cut a dirt road to provide access to the dam site and constructed the dam. Two individuals, using tractors, built the dam with

local clay and rock within a month. As noted, the dam formed a trapezoid approximately 150 feet long at its top and 30 feet long at its base. It blocked an irregularly shaped reservoir 100-150 yards wide by 150 yards long, deepest at about 12 feet. A small boat could sail on the reservoir.

Bianchi's purpose in constructing the reservoir was to provide a source of irrigation for an orchard of macadamia trees, the harvest of which would yield an income for the children's home. Until shortly before its failure, Bianchi or an assistant inspected the dam about twice a year, gaining access by driving a truck along the dirt road. The road was repaired about four times.

At one point, Bianchi cleared approximately 25 acres for the planned homesite and installed a pump, which he housed in a small metal shed. The pump was soon stolen but the shed remained. Gates blocking the entrance to the parcel were also installed, and stolen twice.

Plaintiffs contended that Westfield was liable under an "other insurance" clause in the Ohio policy requiring duplicative insurance to prorate. A bench trial was held on September 26 and 27, 1984. Westfield defended its denial of coverage on the ground, inter alia, that the Reche Canyon property was not "vacant land."

The court gave judgment for plaintiffs ruling, inter alia, that the property *was* vacant land. The judgment decreed Westfield liable for $68,366.70, one-half the compensatory damages and defense expenses in the underlying action. The court also ruled that Westfield was liable on an equal basis with Ohio for the continuing defense of the compensatory element of the underlying action, then on appeal.

Westfield filed a timely notice of appeal.

## DISCUSSION

■ Westfield contends that under the circumstances of this case the trial court erred in concluding that the Reche Canyon property was "vacant land." We agree.

The only California authority suggesting a definition of vacant land is inapposite. In *Donley* v. *Van Horn* (1920) 49 Cal. App. 383 [193 P. 514], the court construed an act of Congress that had conveyed title to " 'vacant, unappropriated, surveyed, unreserved, nonmineral public lands within said state.' " In that specific context, the court stated, " 'Vacant lands . . . are such as are absolutely free, unclaimed, and *unoccupied*.' " (*Id.,* at pp. 385-391,

quoting and emphasizing *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.* (9th Cir. 1901) 112 Fed. 4, 13.) This definition manifestly cannot serve for our question of insurance law, a predicate of which is that the property is other than free and unclaimed.

Lacking California authority on point, we consider decisions from other states for their persuasive value. We find the better reasoned cases to support the rule that the beneficial use or improvement of untenanted property renders that property nonvacant, particularly if the use has accompanied the introduction of artificial structures.

For instance, in *O'Conner* v. *Safeco Ins. Co. of North America* (Fla.App. 1977) 352 So.2d 1244, a Florida appellate court confronted "vacant land" clauses in homeowner's policies. The damage complained of, a personal injury, was alleged to have resulted when an automobile on a paved county road had "skidded out of control on wet clay which had washed from an intersecting clay surface road . . . ." The court concluded, "The clay road was not 'vacant land' within the meaning of the policies' coverage for liability arising out of insured premises in addition to specified dwellings." (*Id.,* at pp. 1245, 1246.)

The Florida court did not define vacant land, but instead took note of several factors important to its decision. The court observed that the "strip of land [had been] *created* for no purpose other than use by automobiles and pedestrians," (italics added) and that the road was "referable to many substantially improved lots whose access depended on it." We presume this latter comment was an observation of the road's economic benefit to the adjoining parcels. Indeed, in a second holding, the court concluded that the landowners' "clearing, grading, filling and maintenance of the road" in conjunction with their subdivision into 100 lots and sale of the land constituted a business pursuit. (*Id.,* at p. 1246.) The rationale of the case therefore appears to be that the introduction of an artificial structure onto land for a business or economic motive renders that land nonvacant, especially where the harm complained of (as here) results from a washing away of that structure.

This proposition is in harmony with the opinion of a New York court in *DeLisa* v. *Amica Mut. Ins. Co.* (1977) 59 App.Div.2d 380 [399 N.Y.S.2d 909]. In that case, the plaintiffs' land encompassed a cave but no introduced structures, and had been improved only by an iron gate, platform, and steel ladder installed near the cave's mouth. A cave-exploring society whose membership had permission to explore the cave had installed the platform and ladder without the knowledge and consent of the landowner. No one lived on the property. (*Id.,* at p. 910.)

The court held that " 'vacant land' . . . mean[s] lands that are both unoccupied and unused." It was conceded that the land was unoccupied and the court reasoned that "[u]se of land implies the employment of the same in a manner that will materially benefit the owner." The society members' visitation did not constitute such a use: no fees were charged, the land was not worked and there was no other commercial activity. The court therefore held the land "vacant." (*Ibid.*)

The principle that materially beneficial use of land by a landowner will render it nonvacant appears also to have implicitly governed *Tolbert* v. *Ryder* (La.App. 1977) 345 So.2d 548. A Louisiana appellate court quickly rejected a claim that a homeowners' policy including vacant land included certain property. The only facts the court cited for its conclusion were that the land had farm buildings on it, and that its owners used the land to conduct an extensive cattle operation. (*Id.,* at p. 553.)

Judicial focus on fixed structures guided the stated reasoning of the court in *American Motorist Ins. Co.* v. *Steffens* (Fla.App. 1983) 429 So.2d 335. In that case, the landowner accidentally failed to convey title to the land underlying a canal when he subdivided his property into residential lots. A person was later injured in the canal, and the landowner instituted an action to declare his homeowner's policy liable under the "insured premises" clause including " 'vacant land, . . . owned by or rented to any insured.' " (*Id.,* at p. 336.) The court construed "vacant land" "as being land which is unoccupied by any permanently affixed structure or inanimate object." In an arguably quixotic conclusion, the court held the canal met this definition. (*Id.,* at p. 337.)

*Travelers Indemnity Company* v. *Holman* (5th Cir. 1964.) 330 F.2d 142 appears also to have accepted a beneficial use analysis. As with the instant matter that case also sought a declaration of insurance liability following flood damage. The land in question was a large tract on which three duplexes stood. Between the duplexes lay a wide space of unoccupied land that had not been developed. The landowners had permitted earth and fill to be dumped on the undeveloped portion, but had not begun the "considerable filling in and leveling off" commercial development of the land would have required. (*Id.,* at p. 145.) Although the court did not rule on this basis, it agreed with the trial court that the landowner's acceptance of others' fill dirt had not rendered that land nonvacant. The court articulated no rule, but obviously reasoned that the gratuitous acceptance of fill dirt, although a beneficial improvement to the property, did not rise to the level intended to trigger the explicit "commencement of construction" clause that would have terminated vacant land status. (*Id.,* at p. 149.)

In *Fort Worth Lloyds* v. *Garza* (Tex.Civ.App. 1975) 527 S.W.2d 195, the court responded to an insurers' argument that as regarded a "vacant land"

inclusion of insured premises in a homeowners' policy, "the land described in complainant's petition could not be vacant as a matter of law because an irrigation pump was located on it." The court stated, "[t]he word 'vacant' means unoccupied. An isolated irrigation pump sitting on the land in question does not make the land occupied." (*Id.*, at pp. 198-199.) The court therefore upheld a trial court finding of the land's vacancy.

■ The principle we glean from this farrago is that the beneficial use or improvement of untenanted property renders it nonvacant, particularly if the use has accompanied the introduction of artificial structures. ■ When we apply the foregoing principle to the case here, the Reche Canyon property was clearly not vacant. Mr. Bianchi built the dam in order to improve the property materially, despite the facts that he abandoned his macadamia orchard plans, and that he presumably intended the children's home to be a nonprofit venture. Moreover, it was the construction and maintenance of the property's most significant improvement—the dam and reservoir—that proximately caused the damage complained of.

■ At trial, no extrinsic evidence was introduced to aid in construction of the policy. The construction of the policy terms is therefore a question of law on which the reviewing court is free to make an independent determination. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 502 [99 Cal.Rptr. 617, 492 P.2d 673]; *Pacific Export Packers* v. *Chubb/Pacific Indem. Group* (1976) 57 Cal.App.3d 186, 190 [129 Cal.Rptr. 86].) If there is ambiguity in the language of an insurance policy, such ambiguity must be resolved in favor of the insured and against the insurer. (*Harris* v. *Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861].) However, we perceive no reasonable ambiguity permitting a construction that land which contained a large earthen dam and a two million gallon reservoir remained "vacant." ■ We therefore hold that the Reche Canyon land was not vacant within the meaning of the Westfield homeowner's policy.

Our conclusion makes it unnecessary to discuss the parties' other contentions.

DISPOSITION

The judgment is reversed.

McDaniel, J., and Hews, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 15, 1987. Kaufman, J., did not participate therein.