Fabricant, J.
Plaintiff Citation Insurance Company (“Citation") seeks a declaratoiy judgment that it is not required to defend and indemnify its insureds, defendants Roger Gomez and Brenda Gomez (“Gomezes”), for losses asserted by Kristine Provencher in Civil Action No. 95-1754, pending in Essex Superior Court. Citation and the Gomezes have filed cross-motions for summary judgment. The parties agree that there are no material facts in dispute, and that the issue between them is one of law. For the following reasons, Citation’s motion for summary judgment is DENIED and the Gomezes’ motion for summary judgment is ALLOWED.
Background
Brenda Gomez owns certain property located in Swampscott, Massachusetts, consisting of 42 lots and approximately 175,000 square feet of land, and known as Map 7, Block 2, Lot O. The property contains an eighty foot radio tower within a concrete bunker measuring ten feet by ten feet. The tower and bunker are surrounded by a fence and barbed wire. With the exception of the tower and blanker the property is a wooded, undeveloped hilltop. Brenda Gomez acquired the property in 1992 from the estate of her mother. The property was last used in the 1960’s by Brenda Gomez’s father to provide radio communication to drivers in his trucking business. The property has been abandoned and unused since that time. The Gomezes have not used the property in any way since Brenda acquired title to it.
The Gomezes are named insureds under a homeowners policy, policy # H K55346, issued by Citation and effective October 16, 1994 to October 16, 1995. The policy covers liability for injuries arising out of any “insured location.” An “insured location” is defined to include the “residence premises” and “vacant land, other than farm land, owned by or rented to an ‘insured.’ ” The policy does not define “vacant land.”
On July 31, 1995, Kristine Provencher, a minor, through her father, John Provencher, brought suit against the Gomezes. She alleged that on March 18, 1995, she was injured on the property while playing with the door to the abandoned b ranker. The Gomezes claimed coverage under the policy, and Citation brought the present action to determine its obligation to indemnify and defend the Gomezes in that suit.[2]
Discussion
This court grants summary judgment where there are no genuine issues of material fact and where the *355 summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
The parties agree that the issue presented by the cross-motions is whether the term “vacant land,” as used in the Citation policy, encompasses the property. They agree also on the basic principles that govern resolution of this issue. Unambiguous provisions of an insurance policy are to be applied according to their “usual and ordinary sense.” Jefferson Ins. Co. of New York v. Holyoke, 23 Mass.App.Ct. 472, 475 (1987). Where a term is ambiguous, however, it must be construed to effectuate the insured’s reasonable expectation of coverage. MacArthur v. Massachusetts Hospital Service, Inc., 343 Mass. 670, 672 (1962). This is so because it is the insurer who has control of the terms of the policy, and who is therefore in a position to spell out a precise definition of its terms, so as to prevent any misleading effect of policy language. Id.. “An ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning. It must be shown that reasonably intelligent persons would differ as to which one of two or more meanings is the proper one.” Jefferson Ins. Co. of New York v. Holyoke, 23 Mass.App.Ct. at 474-75.
Citation argues that “vacant land” is unambiguous, and means land that has no structures or improvements. It relies on cases from intermediate appellate courts of other jurisdictions and a federal case originating in New Jersey. Jelin v. Home Ins. Co., 72 F.2d 326 (3rd Cir. 1934); Cotton States Mutual Insurance Company v. Smelcer, 212 Ga.App. 376 (1994); Dawson v. Dawson, 841 P.2d 749 (Utah App. 1992); Forest v. Louisiana Farm Bureau Casualty Ins., 582 So.2d 989 (La.App.1 Cir. 1991); Bianchi v. Westfield Insurance Company, 191 Cal.App.3d 287 (1987); American Motorist Insurance Company v. Steffens, 429 So.2d 335 (Fla.App.4 Dist. 1983); Fusilier v. Interstate Surplus Underwriters, Ins., 345 So.2d 548 (La.App.3 Cir. 1977); O’Conner v. Safeco Ins. Co. of North America, 352 So.2d 1244 (Fla.App.1 Dist. 1977).
In Cotton States, the Georgia Appeals Court found the term “vacant land” unambiguous, and held that it meant “empty.” 212 Ga.App. at 376-77. On this basis, that court held that property with an abandoned old house and an abandoned country store was not vacant. Id. In Bianchi, the California Appeals Court defined “vacant land” to exclude the “beneficial use or improvement of untenanted property . . . particularly if the use has accompanied the introduction of artificial structures.” 191 Cal.App.3d at 293. The court, therefore, held land with a dam and reservoir on it not vacant. Id. In Foret, the Court of Appeals of Louisiana considered “vacant land” to have the plain and ordinary meaning of “empty” or “unoccupied” by inanimate objects, and held that land with an uninhabited mobile home on it was not vacant. 582 So.2d 990. In Tolbert, the Court of Appeals of Louisiana held that land on which the defendant operated a cattle operation with hundreds of cattle, was not “vacant land.” 345 So.2d at 553. In American Motorist, the. District Court of Appeals of Florida, Fourth District, defined “vacant land” as “land which is unoccupied by any permanently affixed structure or inanimate object,” but held that land with a man-made canal on it was vacant land. 429 So.2d 335 at 337. In O’Conner, the District Court of Appeals of Florida, First District, held that land with a road on it which was maintained and used by automobiles and pedestrians was not vacant. 352 So.2d at 1246. In Dawson, the Utah Appeals Court defined “vacant” as “containing nothing; empty” and held that land with an outhouse, a shed and several other permanent structures was not vacant. 841 P.2d at 751. In Jelin, the United States Court of Appeals for the Third Circuit, reviewing a case originating in the United States District Court for the District of New Jersey, construed “vacant land” to mean land unoccupied by both animate and inanimate objects, and on this basis held that land containing an uninhabited fifteen room building was not vacant. 72 F.2d at 326-27.
The Gomezes argue that the term is at least ambiguous, and can be construed to mean unoccupied or unused. They too cite cases from other states. In DeLisa v. Amica Mutual Insurance Company, 399 N.Y.S.2d 909, 910 (1977), the Appellate Division of the Supreme Court of New York, defined the term “vacant land” as land that is both “unoccupied" and “unused,” and held that a cave with an iron gate at its mouth and a platform and steel ladder inside was “vacant land.” In Fort Worth Lloyds v. Garza, 527 S.W.2d 195, 199 (Tex.App. 1975), the Court of Civil Appeals of Texas construed the term “vacant" to mean “unoccupied," and held that land with an irrigation pump on it was still “vacant.”
Dictionary definitions support both interpretations. Webster’s Ninth New Collegiate Dictionary, 1985 edition, at page 1301, contains the following definition of “vacant":[3]
va-cant. . . 1: not occupied by an incumbent, possessor, or officer ... 2: being without content or occupant ... 3: free from activity or work ... 4: devoid of thought, reflection, or expression ... 5: not lived in ... 6 a: not put to use . . .6 b: having no heir or claimant. . .
The American Heritage Dictionary, Third Edition, 1994, at page 887, provides the following contrary definition:
*356 vacant... 1 .a. Containing nothing; empty, b. Unoccupied. 2.a. Lacking intelligence, b. Lacking expression; blank. 3. Free from activity; idle . . .
As Citation points out, it has legitimate, risk-based reasons for excluding land that has structures, even though such land may be uninhabited and unused. Nevertheless, the existence of these two lines of cases, along "with alternative dictionary definitions, makes it clear that reasonably intelligent persons may differ as to the meaning of the term “vacant land.” The term is therefore ambiguous. Citation could have defined it in the policy, so as to eliminate the ambiguity, but it did not. Under the circumstances presented here, the insureds could reasonably have expected that the property in question would be included under the policy’s coverage for “vacant land.” Accordingly, the term “vacant land” as used in the Gomezes’ homeowners policy means land that is unoccupied and unused. By this definition, the property on which Kristine Provencher’s alleged injury occurred is “vacant land” within the meaning of the policy and Citation must indemnify and defend the Gomezes against her claims.
Order
For the above stated reasons, Citation Insurance Company’s motion for summary judgment is DENIED and Roger and Brenda Gomez’s motion for summary judgment is ALLOWED. It is ORDERED that the following declaration issue:
Citation Insurance Company is obligated to indemnify and defend Roger Gomez and Brenda Gomez in Civil Action No. 95-1754, Essex Superior Court, under homeowners policy number H K55346, subject to applicable policy limits.

 The Gomezes impleaded ISU Anderson and Baker Insurance Services, Inc. (“Anderson and Baker”), their insurance agent, as a third-party defendant. The Gomezes claim that if the property is not covered under the Citation policy, then Anderson and Baker was negligent in failing to procure the proper insurance.

 Nhe court in Cotton States Mutual Insurance Company v. Smelcer, 212 Ga.App. at 377, quotes Webster’s Third New Inti. Dictionary as defining “vacant” as “to be empty, be free.” That same language appears in Webster’s Ninth New Collegiate Dictionary in the etymology section of the word "vacant.” A definition within the etymology section is not of the word as it is currently used, but, rather, it is a definition of the Middle English, Old English, or non-English word from which the current word evolved. Webster’s Ninth New Collegiate Dictionary 15 (1985).