Nos. 2--05--0770 & 2--05--0799 cons.          filed:
7/11/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 03--MR--1607 |
| MYLYNDA PAGE, | ) ) ) | |
| Defendant and Counterdefendant- Appellant | ) ) ) | |
| (Robert Chicoine, Marguerite Chicoine, and Nicole Chicoine, Defendants and Counterdefendants;  American Insurance Company, Defendant and Counterplaintiff- Appellee). | ) ) ) ) ) ) | Honorable Edward R. Duncan, Jr., Judge, Presiding. |

_____

_____

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 03--MR--1607 |
| MYLYNDA PAGE, | ) ) ) | |
| Defendant and Counterdefendant | ) ) ) | |
| (Robert Chicoine, Marguerite Chicoine, and Nicole Chicoine, Defendants and Counterdefendants-Appellants; American Insurance Company, Defendant and Counterplaintiff-Appellee). | ) ) ) ) ) ) | Honorable Edward R. Duncan, Jr., Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendants Mylynda Page, Robert Chicoine, Marguerite Chicoine, and Nicole Chicoine timely appeal the ruling of the circuit court of Du Page County granting summary judgment to plaintiff, American Family Mutual Insurance Company (American Family), and to defendant American Insurance Company (AIC) on plaintiff's complaint seeking a declaration that an injury occurring on the Chicoines' property was not covered by an American Family homeowners' insurance policy. Page and the Chicoines argue that the trial court erred in (1) ruling that the land on which the injury took place was not "vacant land" under the terms of the Chicoines' homeowners' insurance policies with American Family and AIC; and (2) ruling that the land was used as "farm land" under the terms of the policies. For the reasons that follow, we affirm.

The parties do not dispute the relevant facts. The Chicoines own three parcels of real estate relevant to this appeal: their primary residence in St. Charles, Illinois; a second home, located in Galena, Illinois; and a 97-acre property in Hanover Township, Illinois. The Chicoines obtained a homeowners' insurance policy for the St. Charles property and for the Galena property from American Family and AIC, respectively. Neither of the two policies explicitly refers to the Hanover property. However, the policies have similar provisions that extend coverage to "vacant land" owned by the Chicoines. The American Family policy defines the property insured as follows, in relevant part:

"For Personal Liability and Medical Expense Coverages, insured premises also include:

* * *

(3) vacant land (other than farm land) owned by or rented to an

insured.  This

includes land on which a one or two family dwelling is being built for the

personal use

of an insured."

Likewise, the AIC policy states as follows, in relevant part:

" 'Insured location' means:

* * *

e.   Vacant land, other than farm land, owned by or rented to an

'insured.' "

On July 20, 2002, while both of the above insurance policies were in effect, Page was injured while riding in an all-terrain vehicle driven by Nicole Chicoine on the Hanover property.  Page later contacted American Family and AIC to make claims for her injury.  On December 10, 2003, American Family filed a complaint for a declaration that its policy with the Chicoines did not cover the injury at the Hanover property.  AIC filed a counterclaim against Page and the Chicoines for a declaration that its policy with the Chicoines did not cover the Hanover property injury.

American Family filed a motion for summary judgment, AIC joined and adopted the motion, and the Chicoines filed a countermotion for summary judgment.  American Family attached to its motion for summary judgment a deposition from Robert Chicoine.  In the deposition, Robert stated that he purchased the Hanover property in 1998 or 1999.  The property was zoned as farmland, and the property tax assessment for the property indicated that the land was assessed as farmland.  When Robert purchased the property,

there were two structures located on it: "[a]n old lean-to building and an old decrepitated [sic] barn." After he purchased the property, Robert had the barn torn down and had a "metal pole barn" built. The new barn measured "60 by 45" and was a permanent structure. Robert later had a concrete floor poured for the structure, which cost approximately $18,000 to complete. He used the barn to house "ATV's, a car, and a *** tractor/mower." The Chicoines visited the property 8 to 10 times per year, either to walk the property or to ride in the all-terrain vehicles. Robert had never spent a night at the Hanover property.

Sometime before July 2002, Robert learned from a neighbor that wild alfalfa was growing on his land, and he agreed to allow the neighbor to cut and take the alfalfa. The alfalfa grew naturally, and Robert never made any effort to grow or harvest it himself. He received no income from the neighbor in exchange for allowing him to harvest the alfalfa. Though he had never worked on a farm or as a farmer, Robert's federal tax returns from 2000 to 2002 included farm profit and loss forms that indicated that he materially participated in business on the property, and he claimed tax deductions for "farm loss" in the amount of his mortgage payments. The returns also indicated income from payments the government made to him on the condition that he refrain from growing certain crops.

On July 20, 2005, the trial court granted summary judgment in favor of the insurers. The trial court concluded that the Hanover property was not "vacant land" under the policies and, even if it was, it was "farm land" and thus excluded from coverage. Page and the Chicoines appealed, and we consolidated their appeals.

Page and the Chicoines first argue that the trial court erred in granting summary judgment on the basis that the Hanover property did not constitute "vacant land" under the

insurance policies and was thus excluded from coverage. Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. State Farm Insurance Co. v. American Service Insurance Co., 332 Ill. App. 3d 31, 36 (2002). The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered. American Service Insurance Co., 332 Ill. App. 3d at 36. When construing an insurance contract, the court's primary objective is to give effect to the intent of the parties at the time of contracting. Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). To ascertain the intent of the parties and the meaning of their insurance policy, the court construes the contract as a whole, with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 108 (1992). If the words used in the policy are unambiguous, they must be given their plain, ordinary, and popular meaning. Outboard Marine, 154 Ill. 2d at 108. The interpretation of an insurance contract and the entry of summary judgment are questions of law that are reviewed de novo, without any deference to the trial court's ruling. Crum & Forster Managers Corp., 156 Ill. 2d at 390-91.

The relevant insurance policy language here extends coverage to "vacant" land owned by the Chicoines. The term "vacant" is not defined in the insurance policies. Therefore, we must determine whether the meaning of "vacant" includes the Hanover

property. As noted, where terms of an insurance contract are unambiguous, we must accord them their plain, ordinary, and popular meaning. We therefore turn to the dictionary, which states that the word "vacant" means, inter alia, "being without content or occupant" or "not occupied or put to use <~land>." Webster's Third New International Dictionary 2527 (1993). The term is synonymous with the word "empty." Webster's Third New International Dictionary 2527 (1993).

We also consult several cases, both from Illinois and from foreign jurisdictions, that address the meaning of the term "vacant." Though the parties cite no Illinois cases dealing with precisely the issue we face here, AIC cites several Illinois cases discussing the meaning of the term "vacant" in the context of fire insurance policies and defining it as " 'generally empty or deprived of contents' " (Lundquist v. Allstate Insurance Co., 314 Ill. App. 3d 240, 245 (2000), quoting Thompson v. Green Garden Mutual Insurance Co., 261 Ill. App. 3d 286, 291 (1994)), or " 'empty of everything but air' " (Gash v. Home Insurance Co. of New York, 153 Ill. App. 31, 33 (1910)). See also Myers v. Merrimack Mutual Fire Insurance Co., 788 F.2d 468, 471 (7th Cir. 1986) (citing Illinois cases for the definition of "vacant"); 44 Am. Jur. 2d Insurance §1219, at 454 ("vacant" means "entirely empty, that is, lacking animate or inanimate objects"), citing Myers, 788 F.2d 468. The definitions from these cases are instructive, but they are not dispositive, because, as Page points out, they each define "vacant" as it relates to a building, not a piece of land. See Cotton States Mutual Insurance Co. v. Smelcer, 212 Ga. App. 376, 378, 441 S.E.2d 788, 789 (1994) ("the word 'vacant' modifies the word 'land,' not 'structure.' The policy covers land which is vacant" (emphasis in original)).

The parties also cite several analogous cases from foreign jurisdictions. See K. Reynaga, What Constitutes "Vacant Land" Within Meaning of Liability or Property Insurance Policy Provisions, 47 A.L.R. 5th 535 (1997) (discussing cases dealing with definition of "vacant" land). For example, in Dawson v. Dawson, 841 P.2d 749 (Utah App. 1992), the court was charged with determining whether land on which an all-terrain-vehicle-related injury occurred was "vacant" so as to fall under a homeowners' insurance policy with a provision similar to those quoted above. The court adopted the dictionary definitions of the word "vacant," which indicated that the word meant " 'containing nothing; empty' " or "land 'in the natural state.' " Dawson, 841 P.2d at 751, quoting American Heritage Dictionary 1334 (2d College Ed. 1985). Because the land in Dawson contained several buildings regularly used by the owners, including two trailers, an outhouse, and a storage shed, the land was not empty, and thus the policy did not apply. Dawson, 841 P.2d at 749-50.

Travelers Indemnity Co. v. Holman, 330 F.2d 142 (5th Cir. 1964), involved an area of open land surrounding three duplex lots all owned by the same insured. All of those duplexes "were on well defined traditional city lots which either were then, or were shortly to be, formally platted on approved subdivision plans." Holman, 330 F.2d at 149. With very little analysis, the court held that the tract of land between the duplexes was "vacant" because it was "unoccupied [and] open." Holman, 330 F.2d at 149.

In DeLisa v. Amica Mutual Insurance Co., 59 A.D.2d 380, 399 N.Y.S.2d 909 (1977), the court considered whether land was "vacant" under an insurance policy where the land contained a cave with an iron gate at its mouth and a platform and steel ladder inside. DeLisa, 59 A.D.2d at 381, 399 N.Y.S.2d at 910. The owners of the property were not

aware of the structures, which had been installed by a group of cave explorers whom the owners allowed to use the cave, free of charge. DeLisa, 59 A.D.2d at 381, 399 N.Y.S.2d at 910. The court held that the term "vacant land," given its ordinary import, meant "lands that are both unoccupied and unused." DeLisa, 59 A.D.2d at 382, 399 N.Y.S.2d at 910. The court reasoned that "[u]se of land implies the employment of the same in a manner that will materially benefit the owner." DeLisa, 59 A.D.2d at 382, 399 N.Y.S.2d at 910. It concluded that the land was unoccupied and, because the land was not used in any way beneficial to the owners, the land was vacant.

We do not agree with the holding in DeLisa, for several reasons. First, we do not agree that whether a property is used is relevant to the issue of whether it is vacant. The important inquiry focuses on the nature of the land and the objects upon it, not the way in which the land is used. Second, even if nonuse of the land were a component of vacancy, we would not see any reason to consider only use that is "materially benef[icial] to the owner." The identity of the person using the land has no bearing on whether the land is used, because the word "used" would describe the land, and thus the question of use would center on whether the land was used, not whether the owner was using it. Therefore, if the court in DeLisa truly relied on a definition of vacancy that required nonuse, it would not have found the land to be vacant, because it was used by the cave explorers.

Third, even if use by the owner were relevant to whether land is vacant, we would not believe that the use would have to be "materially beneficial" to the owner in order for the land to be considered nonvacant. The motive for building structures on a piece of land has no effect on whether those structures render the land nonvacant. Indeed, a property owner may place several buildings on a piece of land without any intention of deriving

economic benefit from them. The land in such a case could hardly be considered vacant simply because it did not generate profit. Likewise, a property owner may accept money in exchange for refusing to build on a completely undeveloped forest property, or, as in this case, he could use his ownership of a property for favorable tax treatment. The land in either circumstance, if otherwise empty, could hardly be considered nonvacant simply because it produced profit for the landowner. The relevant inquiry centers not on the economic effect of any structures on the property, but rather on the existence of any structures on the property. Accord Smelcer, 212 Ga. App. 376, 441 S.E.2d 788 (land containing an abandoned house was not "vacant" under an insurance policy). Therefore, we do not take use or "business or economic" motive into account in determining if the Hanover property is vacant.

We note that the Chicoines at least partially rely on the holding in DeLisa as support for their argument. However, even if use were a factor to be considered in determining whether land is vacant, the land in this case was used. The Chicoines used the land regularly for recreational purposes, including all-terrain-vehicle riding, and, indeed, they were using the property in exactly that fashion at the time the injury giving rise to this litigation occurred. The Chicoines note that they derived no economic benefit from their use of the land, but, as noted above, the economic benefit of a piece of land is irrelevant to the issue of whether the land is vacant.

In Smelcer, 212 Ga. App. 376, 441 S.E.2d at 788, an insurance company argued that land containing an abandoned old house did not meet the definition of "vacant land" so as to fall under coverage of a homeowners' insurance policy. Smelcer, 212 Ga. App. at 376, 441 S.E.2d at 788. The court looked to the dictionary, defining "vacant" as " 'to be

empty, be free,' " and to previous state case law, defining the word as " 'empty or deprived of contents or without inanimate objects.' " Smelcer, 212 Ga. App. at 377, 441 S.E.2d at 789, quoting Webster's Third New International Dictionary ___ (___). It also cited a treatise that stated that " 'clearly *** coverage [of "vacant land"] does not extend to land containing buildings[,] as "vacant land" refers to land unoccupied, unused and in the natural state.' " Smelcer, 212 Ga. App. at 377, 441 S.E.2d at 789, quoting G. Couch, Couch on Insurance 2d §44:307, 477-78 (1982). Thus, the court concluded that the land in question was not vacant. Smelcer, 212 Ga. App. at 377, 441 S.E.2d at 789. We agree with the holding in Smelcer on the basis that the land was nonvacant because it contained a building.

In American Motorist Insurance Co. v. Steffens, 429 So. 2d 335 (Fla. App. 1983), an insurance company argued that property on which a canal had been built was not vacant property that would be covered under a homeowners' insurance policy with language similar to that in this case. The insured had "excavated a portion of the property to create an interior lake, and then had a canal dug to connect the lake to the Intracoastal Waterway." Steffens, 429 So. 2d at 336. On appeal, the insurer contended that the canal land was nonvacant because it contained tidal waters, watercraft, and marine life. Steffens, 429 So. 2d at 337. It also contended that the canal was built to accommodate watercraft traffic and was specifically constructed to provide access to the interior lake, and it analogized the case to one in which a court determined that land with a clay road could not be considered vacant. Steffens, 429 So. 2d at 337. The court held that the land was, "in the ordinary usage of the word, vacant land," even though it contained water and marine life and even though "boats [were] operated" upon it. Steffens, 429 So. 2d at 337. The

court construed the term "vacant land" as meaning "land which is unoccupied by any permanently affixed structure or inanimate object." Steffens, 429 So. 2d at 337.

We disagree with the holding in Steffens, and we find persuasive the insurer's argument in that case. The land in question had been altered with the addition of a canal that served as a transportation conduit for boats, much in the same manner that a sidewalk would serve as a transportation conduit for pedestrians. The court in Steffens reasoned that "[o]ne would hardly consider a parcel of land as anything other than vacant merely because it contained a drainage ditch filled with water, anymore than one would consider a parcel of land on which there were only native trees and underbrush as anything other than being vacant." Steffens, 429 So. 2d at 337. That reasoning misstates the facts of the case. The canal was more than a simple "drainage ditch filled with water"; it was a transportation conduit for watercraft.[1] Nor is the analogy to "native trees and underbrush" apt; the canal in Steffens was not native but, rather, was built by the landowner.

In Fort Worth Lloyds v. Garza, 527 S.W.2d 195 (Tex. App. 1975), an insurer argued that land that contained an irrigation pump was not "vacant land" covered under an insurance policy. The court held that, "[a]lthough there may be some question as to

---

[1]As noted above, we do not consider whether land or the structures thereon were used in determining whether land was vacant. We refer to the use of the canal here for the limited purpose of describing the canal.

whether [the land was vacant], such doubt must be resolved in the insured's favor." Garza, 527 S.W.2d at 199. It reasoned that the term "vacant" meant "unoccupied" and that an "isolated irrigation pump *** does not make the land occupied." Garza, 527 S.W.2d at 199. Thus, it concluded that the land in question was vacant.

Finally, in Bianchi v. Westfield Insurance Co., 191 Cal. App. 3d 287, 236 Cal. Rptr. 343 (1987), the court considered whether land containing a man-made dam, a storage shed, and a dirt road leading to the dam could be considered "vacant" so as to be covered by an insurance policy. The court surveyed several of the cases already mentioned here and gleaned a rule that "the beneficial use or improvement of untenanted property renders it nonvacant, particularly if the use has accompanied the introduction of artificial structures." Bianchi, 191 Cal. App. 3d at 293, 236 Cal. Rptr. at 346. The Bianchi court concluded that the insured's property was not vacant, because it contained an artificial structure built for business or economic gain. Bianchi, 191 Cal. App. 3d at 291, 236 Cal. Rptr. at 345. We agree with the holding in Bianchi that the land was not vacant, but, as explained above, our conclusion does not rest on the question of whether the land was put to use or whether it was used for economic gain. Rather, we agree that the landowner's construction of a dam, a shed, and a dirt road on the property rendered it nonvacant.

In the present case, we hold that the Hanover property was not vacant. We base our conclusion on the fact that the land contained a pole building. To the extent that any of the above cases would dictate a different result, we find them unpersuasive. See Skipper Marine Electronics, Inc. v. United Parcel Service, Inc., 210 Ill. App. 3d 231, 239 (1991) ("Decisions of the reviewing courts of foreign jurisdictions are not are not binding on Illinois courts").

Page and the Chicoines offer several arguments militating against our conclusion. First, the Chicoines argue that the term "vacant" as used in the insurance contracts must be considered ambiguous. The Chicoines note that the policies refer to vacant land "other than farm land" and thus that "farm land" is meant to be a subset of "vacant land." The Chicoines then reason that "reasonable people are familiar" with the fact that farmland must include buildings such as barns, silos, and out-buildings, and, therefore, the policies' terms are ambiguous, because "vacant" cannot be meant in its ordinary sense. We disagree with the Chicoines' premise. Reasonable people can agree that farmers use buildings such as those the Chicoines mention, but it does not necessarily follow that farmers place at least one of those buildings on each piece of property that they farm. Therefore, we reject the Chicoines' argument that the insurance policies' terms are ambiguous.

Second, Page and the Chicoines urge that the above cases indicate that "vacant" should be defined, not in terms of whether the land is empty, but, rather, in terms of whether it is "habitable." They thus argue that the Hanover land was not habitable, even though it contained buildings, and must be considered vacant. We disagree with this approach. The word "vacant" is used here to modify the word "land," not the word "building" or "structure." Smelcer, 212 Ga. App. at 378, 441 S.E.2d at 789 ("the word 'vacant' modifies the word 'land,' not 'structure.' The policy covers land which is vacant" (emphasis in original)). While a building may be considered either habitable or unhabitable, that terminology is not typically used to describe land. The definition we adopt considers the meaning of the word "vacant" as it relates to land. To the extent that the cases Page and the Chicoines cite espouse a definition of "vacant" that hinges on habitability, we decline to follow them.

Third, the Chicoines argue that the Hanover property was not used in a manner that materially benefitted them. However, as noted above, regardless of whether or how the Chicoines used the property, it contained a building and thus cannot be considered vacant. In any event, contrary to their assertions, even if they did not profit monetarily from their use of the land, the Chicoines nevertheless used the Hanover property 8 to 10 times per year, and they used the pole barn to store the all-terrain vehicles they sometimes used while at the property. Therefore, the building on the land was connected with their use of the land for recreational purposes.

Fourth, Page argues that the accident in this case occurred away from any buildings on the Hanover property and thus that the parties' purpose in excluding nonvacant land from coverage would not be served by denying coverage here. Page offers that the clauses excluding nonvacant land from coverage sought to avoid coverage of the risks associated with use of buildings or structures. We disagree. The purpose of the provisions is to define the scope of the Chicoines' insurance coverage, and we must enforce the terms of the contracts according to their plain and unambiguous language, as detailed above. We must also presume that the plain meaning of the contracts' terms reflects the parties' understandings of the allocation of risks in their contracts.

Fifth, the Chicoines point out that the American Family policy defines "insured premises" to include "vacant land (other than farm land) owned by or rented to an insured. This includes land on which a one or two family dwelling is being built for the personal use of an insured." Therefore, the Chicoines argue, the term "vacant land" must be meant to include land on which a dwelling is under construction, and thus the term "clearly contemplates that land may be vacant even when there is a structure on it." We disagree.

In our view, the language referring to a dwelling under construction is meant to create an exception to the ordinarily understood meaning of "vacant land" so that land with dwellings under construction may be included in the policy. The second sentence quoted from the policy is meant not to explain the meaning of the term "vacant land," but rather to expand the coverage under the contract to land that would not otherwise be considered vacant. The sentence does not contemplate that land may be vacant even with a structure upon it in any context other than when a dwelling is under construction; instead, it indicates that land with a dwelling under construction may be covered as if it were vacant land, even though it otherwise would not be.

Because we agree with the trial court's conclusion that the land in question here was not vacant, we do not reach the issue of whether it was farmland.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

KAPALA and GILLERAN JOHNSON, JJ., concur.