# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Harris N.A. v. Harris*, 2012 IL App (1st) 113813

---

| | |
|---|---|
| Appellate Court Caption | HARRIS N.A., Plaintiff-Appellee, v. SHERI HARRIS, Defendant-Appellant (Stuart Levine, Defendant). |
| District & No. | First District, First Division<br>Docket No. 1-11-3813 |
| Filed<br>Rehearing denied | September 4, 2012<br>September 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for plaintiff on its complaint alleging that defendant's former husband defaulted on a note held by plaintiff and fraudulently transferred assets to defendant in an attempt to prevent plaintiff from repossessing them. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-07536; the Hon. Nancy J. Arnold, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Leslie J. Rosen, of Chicago, for appellant.

Chapman & Cutler, LLP, of Chicago (David S. Barritt and James P. Sullivan, of counsel), for appellee.

Panel

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Justices Hall and Karnezis concurred in the judgment and opinion.

**OPINION**

¶ 1     The appellant, Sheri Harris, appeals from the circuit court's ruling granting summary judgment in favor of the plaintiff, Harris N.A., on several counts of its complaint against her and her former husband Stuart Levine, who is not a party to this appeal. The complaint alleged that Levine had defaulted on a note and had fraudulently transferred assets to the appellant to avoid their being recouped by the bank. On appeal, the appellant argues that the trial court erred in finding most of the disputed transfers to be fraudulent, because (1) Levine had no ownership interest to transfer after his assets had been forfeited to the United States government; (2) the transfers were not fraudulent because they were effected for the purpose of maintaining the defendants' home, as required by a forfeiture agreement with the United States; (3) the transfers were not fraudulent because they were made in exchange for adequate consideration; (4) to the extent the transfers were fraudulent, the plaintiff was entitled to only one-half of their value, because the transferred assets were marital property; (5) the circuit court should not have ruled the transfer of a Moore sculpture to be fraudulent, because the plaintiff never so alleged; and (6) the circuit court should not have ruled the transfer of an Andy Warhol portfolio to be fraudulent, because Levine never had an ownership interest in the portfolio. For the reasons that follow, we affirm the circuit court's judgment.

¶ 2     In February 2002, the plaintiff filed its complaint, which alleged that Levine had defaulted on a note and that judgment had been entered against him for more than $3,300,000. The complaint further alleged that, knowing that he was insolvent and acting with the intention of preventing full collection of the judgment, Levine had either transferred several valuable assets to the appellant for no consideration or had sold the assets and then transferred the proceeds to the appellant for no consideration. The complaint specifically mentioned an ownership in Hidden Beach Records, LLC (sold for $50,000); a Mitoraj sculpture (sold for approximately $130,000); "certain artwork" (one sale for $63,500, another for approximately $25,000); a Moore sculpture (sold for $100,000); a federal income tax refund (approximately $25,000); a Jeanne Duval painting (sold for $39,550); a dining room set and other personal property (sold for approximately $63,000 in one instance and

$100,000 in another); an Andy Warhol portfolio (sold for $55,000); a car (valued at $32,000); his ownership interest in a Weston, Florida, residence (valued at $600,000); and approximately $431,000 of the proceeds of the sale of his and the appellant's Highland Park home. The plaintiff alleged that these transfers violated the Uniform Fraudulent Transfer Act (Act) (740 ILCS 160/1 *et seq.* (West 2010)), and it asked, among other things, that the court declare the transfers void and enter judgment against the appellant.

¶ 3     The appellant responded by filing a motion to dismiss that argued, *inter alia*, that Levine had forfeited to the government his interest in the disputed property and that she gave reasonable consideration in exchange for the property because she had legal right to half of it. In support of her motion, the appellant presented Levine's 2006 plea agreement in case number 05-CR-691 in the Northern Division of the United States District Court. That agreement contains the following provision regarding Levine's forfeiture:

"[Levine] further acknowledges that the government will file a civil complaint against certain property, namely $5 million, alleging that the property is subject to forfeiture. [Levine] relinquishes all right, title, and interest he may have in this property that is used to satisfy the amount due and further agrees to the entry of a judgment against him, extinguishing any interest or claim he may have had in the property subject to forfeiture, regardless of where they may have been transferred or hidden. *** [Levine] agrees that no transfers of property available to satisfy this judgment can be effectuated by [him] or his agents without concurrence of the government or approval of the Court. To the extent that [Levine] owns any property available to satisfy this judgment jointly, he agrees that any efforts to sell, to transfer, or otherwise convey his interest shall be subject to the same conditions. Further, [Levine] agrees [to] maintain all financial obligations relating to any property so as to preserve and protect the availability of the property to satisfy the forfeiture judgment."

¶ 4     The appellant also presented a March 2008 stipulated agreement between her and federal prosecutors. That agreement recited Levine's liability in a forfeiture suit, and it described the forfeiture suit as follows:

"5. On February 21, 2008, the United States filed a verified complaint for forfeiture *** for funds in the amount of five million dollars, *** to be satisfied by proceeds of the real properties located [in Highland Park, Illinois,] and [Weston, Florida].
***

7. On March 5, 2008, [Levine] entered into a stipulated agreement with the United States resolving his interests in and claims to the defendant properties and *** agreed to the entry of a judgment against him in the amount of five million dollars and waived any right ***, title or interest he may have in the defendant properties or the proceeds from the sale of the properties ***.

8. The defendant properties representing the substitute *res* to be sold so that proceeds may be applied to the aforementioned outstanding agreed five million dollar judgment against [Levine] are held jointly by [Levine] and [the appellant], his spouse, as part of their marital estate. The parties agree that the assets of the marital estate of [Levine and the appellant] have an aggregate value of approximately $4,230,256. [The appellant]

understands and acknowledges [Levine's] obligation to satisfy this forfeiture judgment *** . The United States understands and acknowledges that [the appellant] has a legal right, title and interest to 50 percent of the value of the assets of the marital estate she shares with [Levine], and that the United States may not seek to satisfy the forfeiture judgment against [Levine] with [her] interests in the marital estate.

9. In consideration of the foregoing and in resolution of the respective interests of [the appellant] and the United States in the assets of the marital estate, [the appellant] and the United States agree to the forfeiture of fifty percent (50%) of the aforementioned agreed value of the marital estate less $250,000 which amount the parties agree approximately equals $1,865,128, in partial satisfaction of the forfeiture judgment. On March 4, 2008, a purchase and sale agreement *** was executed between [Levine, the appellant], and a prospective buyer for [the Highland Park property] in the amount of $3,850,000.00. *** From the closing of the [Highland Park property], the United States, in satisfaction, will receive approximately $1,865,128 of the net proceeds *** . ***

10. *** [T]he United States agrees that upon the partial satisfaction of the forfeiture judgment described above, it will have no further claim and will take no further action, including administrative, civil or other criminal proceeding against any [of] the property, real or personal, in which [the appellant] presently has an interest or claim.

11. [The appellant] further agrees that while the [Highland Park] property is in the process of being marketed for sale and until such time as the completed sale has closed *** , she must maintain the defendant real properties and continue to satisfy all financial obligations associated with the real properties in order to preserve and protect these real properties *** so that the proceeds from their sale can be applied to the agreed judgment *** ."

¶ 5 The appellant's motion to dismiss included a copy of a similar stipulated agreement between the government and Levine. That agreement stated that Levine agreed to relinquish his interest in property used to satisfy the forfeiture claim against him and that the forfeiture claim was "to be satisfied by proceeds from the sale of" the Highland Park and Weston properties. It further stated that the government's forfeiture complaint had been filed "against five million dollars and the [Highland Park and Weston] properties, the proceeds from the sales of those real properties being substituted for the five million dollar judgment and subject to forfeiture." As with the appellant's stipulated agreement, Levine's agreement included a clause stating that he would maintain the real properties so that their value would be protected until they were sold.

¶ 6 Also attached to the motion to dismiss was a copy of the forfeiture complaint filed against Levine in February 2008. That complaint stated that it was a forfeiture action "for forfeiture of funds in the amount of five million dollars, to be satisfied by proceeds from the sale of real properties located [in Highland Park and Weston]."

¶ 7 In addition, the appellant provided a copy of the July 1, 2008, judgment dissolving her and Levine's marriage. According to the agreed property distribution attached to that judgment, the appellant kept an A.G. Edwards account and two Chase Bank accounts, while Levine kept a third Chase Bank account.

¶ 8     Finally, the appellant attached to her motion to dismiss a partial transcript of a deposition in which Levine claimed not to have owned any Andy Warhol artwork. Levine explained that the Warhol art at issue was owned by someone else but kept in his house for several years for safekeeping.

¶ 9     The circuit court denied the appellant's motion to dismiss, and the appellant answered the plaintiff's complaint. In her answer, the appellant admitted that assets or proceeds of asset sales identified in the complaint had been placed into her bank accounts. Among these admissions was an admission that she sold the Andy Warhol portfolio for $55,000. The appellant added several affirmative defenses, including a defense that she used the proceeds for ordinary financial affairs such as household expenses.

¶ 10    The plaintiff and the appellant thereafter filed cross-motions for summary judgment. In her motion, the appellant reiterated her arguments that Levine never had an interest in the disputed assets, had lost his interest by forfeiture, or had transferred his interest to the appellant pursuant to the dissolution of their marriage. The appellant attached to her motion the above-quoted documents. She also attached an affidavit in which she averred that she liquidated marital assets in order to meet household expenses because "most of [their] liquidated marital assets were frozen." In her affidavit, the appellant accounted for her use of some of the proceeds of the asset sales. She listed household expenses as well as credit card bills, laundry services, cleaning services, living expenses for her children, personal training expenses, medical expenses, legal fees, automobile expenses, and taxes. She supported her affidavit with excerpts from her accounting register and with sometimes-redacted bank statements.

¶ 11    In its motion for summary judgment, the plaintiff argued, among other things, that Levine's forfeiture encompassed only the two named parcels of real property and that the appellant's and Levine's divorce did not shield their other assets from liability.

¶ 12    After hearing argument on the cross-motions, the circuit court granted the plaintiff's motion for summary judgment with respect to several of the transferred or sold assets, including the Moore sculpture, the Warhol portfolio, some personal property, an income tax refund, and the Hidden Beach Records ownership interest. The circuit court fixed the total value of these assets at $546,325.73. However, the circuit court granted summary judgment to the appellant with respect to an automobile and the proceeds of the sales of the Highland Park and Weston properties. The appellant now timely appeals the circuit court's order.

¶ 13    Because all of the appellant's arguments on appeal challenge the circuit court's decision to grant summary judgment partly in favor of the plaintiff, we begin our analysis with the well-established standards for review of a circuit court's decision to grant summary judgment. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). "The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered." *American Family Mutual Insurance Co. v. Page*,

366 Ill. App. 3d 1112, 1115, 852 N.E.2d 874 (2006). "The propriety of a trial court's decision to grant summary judgment presents a question of law, which we review *de novo*." *Bigelow Group, Inc. v. Rickert*, 377 Ill. App. 3d 165, 168, 877 N.E.2d 1171 (2007).

¶ 14    The circuit court here granted summary judgment to the plaintiff on its claims that the appellant received fraudulent transfers of assets, in violation of section 6 of the Act. That section provides, in pertinent part, as follows:

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." 740 ILCS 160/6(a) (West 2006).

If its elements are met, the Act creates a presumption of the debtor's fraud. See *Cordes & Co. v. Mitchel Cos.*, 605 F. Supp. 2d 1015, 1020-21 (N.D. Ill. 2009) (discussing the Act).

¶ 15    The appellant does not dispute that Levine's indebtedness to the plaintiff arose before the transfers now at issue, nor does she dispute that Levine was insolvent at the relevant times. Instead, she raises six distinct challenges to the circuit court's finding that his transfers to her were fraudulent under the Act.

¶ 16    First, the appellant argues that the property transfers could not have been fraudulent, because Levine had no assets to transfer to her in the first place. According to the appellant, Levine "had nothing to transfer because he had forfeited all of his assets to the United States government." We disagree with the appellant's interpretation of the federal forfeiture proceedings against Levine. Instead, we agree with the plaintiff that the scope of Levine's forfeiture was limited to his interest in the Highland Park and Weston properties.

¶ 17    We draw this conclusion from the documentation the appellant presented to the circuit court. That documentation begins with Levine's plea agreement, which states that the United States would pursue a $5 million forfeiture complaint against "certain property" of Levine's and encumber Levine's ability to transfer property "available to satisfy this judgment." Later documents clarify exactly what "certain property" would satisfy the forfeiture judgment. The stipulated agreement between the appellant and the United States, like the agreement between Levine and the United States, indicates that the forfeiture judgment was "to be satisfied by the proceeds of the real properties located [in Highland Park and Weston]." Likewise, the forfeiture complaint itself states that the forfeiture judgment was "to be satisfied by proceeds from the sale of real properties located [in Highland Park and Weston]." These passages unequivocally limit the reach of the forfeiture judgment to the two real properties.

¶ 18    To urge a different interpretation, the appellant points out that her stipulated agreement with the United States included (1) a valuation of her and Levine's marital estate and (2) the government's agreement to leave just over half of that value for the appellant. In the appellant's view, these passages indicate that the government seized the entirety of Levine's portion of the marital estate, not just his real estate holdings. We disagree. The passage to which the appellant refers does indeed set a value for the marital estate, but it does so for

purposes of shielding the appellant from Levine's forfeiture. The fact that the government put a value on the marital estate does not change the scope of Levine's forfeiture, which, as we have stated, was limited to his interest in the two named real properties. For that reason, we reject the appellant's argument that Levine's forfeiture bereaved him of any property interests he could have transferred fraudulently.

¶ 19　　The appellant's second argument on appeal is that the transfers here were not fraudulent, because they were necessary to allow her to maintain her and Levine's real property, an obligation that she and Levine assumed pursuant to their agreements with the United States. As support for this argument, the appellant points out that household expenses were paid out of her personal account. Based on this, the appellant argues that she and Levine had no choice but to sell the disputed assets and place them in her account. However, among its several responses to this point in its brief, the plaintiff points out that, at the time of the disputed asset transfers, the appellant had access to over $1 million in her own funds. This fact belies her claim that she and Levine needed to sell the assets in order to pay for household expenses.

¶ 20　　The appellant's third argument on appeal is that the transfers should not be considered fraudulent because Levine received adequate consideration for them. Because the lack of adequate consideration is one of the three elements necessary to establish fraud under section 6(a) of the Act, the appellant argues that the exchange of consideration defeats the plaintiff's fraud claim. The appellant argues that Levine transferred the assets to her so that she would pay household bills as required by the terms of his criminal bond, and thus that he obtained a benefit–his own liberty–in exchange for the assets. However, as the plaintiff observes in its brief, neither the appellant nor Levine raised this "liberty" argument at the circuit court level. Moreover, as even the appellant observes in her brief, "[t]here was no evidence presented on these cross motions for summary judgment as to what [Levine's] liberty *** meant to him." Because neither this argument nor any evidence supporting it was presented to the circuit court, we deem the argument forfeited on appeal. See *Cooney v. Magnabosco*, 407 Ill. App. 3d 264, 268, 943 N.E.2d 290 (2011) (stating that an appellant that fails to raise an issue in the circuit court waives that issue for purposes of appeal).

¶ 21　　The appellant's fourth argument is that much of the disputed property was marital property in which the appellant already held a one-half interest. Thus, she argues, at least half of the proceeds from the sale of those assets belonged to her irrespective of any fraudulent transfer. However, again, the plaintiff failed to raise this argument at the circuit court level, and we deem it forfeited.

¶ 22　　The appellant next argues that the circuit court should not have awarded the plaintiff the value of the Moore sculpture, because the plaintiff never asserted that Levine's transfer of the Moore sculpture to her was fraudulent. We disagree. Count V of the plaintiff's complaint, titled "Violation of Illinois Uniform Fraudulent Transfer Act Transfer of Moore Sculputure," asserts that "[t]he sale by Levine of the Moore sculpture *** was fraudulent." That count prays that the court, among other things, "[d]eclare the sale[ ] of the Moore sculpture *** as void" and "[o]rder that [the judgment against Levine on the plaintiff's note] be declared a lien on the Moore sculpture." This count unquestionably raises the allegation that Levine transferred the sculpture to the appellant in order to defraud the plaintiff.

¶ 23    The appellant's final argument on appeal is that the circuit court erred in ruling that Levine fraudulently transferred the Warhol portfolio. In fact, the appellant argues, "[t]he evidence was undisputed that [Levine] never had an ownership interest in this portfolio." Be that as it may, the evidence is also unquestioned that the appellant sold to a third party whatever interest she and Levine had in the portfolio. The actual value of that interest is a matter for them and their buyer. For our purposes it is sufficient to know that the appellant received value for it, and Levine and the plaintiff did not.

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 25    Affirmed.