No. 2--06--0879     Filed: 10-24-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE BIGELOW GROUP, INC., BIGELOW-AURORA, LLC, JOHN PRUSKO, DARREN J. FINNEGAN and APRIL K. FINNEGAN, MICHAEL PFILE and HEATHER SPRING, MICHAEL HAMMOND and KIRSTEN HAMMOND, VERDIE SAMKO, PETER N. ROSCH, ANGELA KOKKINOS, KRISTI STONE and RYAN STONE, DEKALVIN EPPS and CHARLENE EPPS, MICHAEL SANDERS and JANA BLUMBERG, KEITH P. CAMPBELL and NICOLE CAMPBELL, BRYAN and J. SIROTA, NICK MARASCO and LAUREN MARASCO, and SHERMAN CARTER and MARSHA CARTER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 04--MR--488 |
| DAVID J. RICKERT, Kane County Collector, | ) ) | Honorable Michael J. Colwell, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, the Bigelow Group, Inc. (Bigelow), et al.,[1] timely appeal the trial court's decision to grant summary judgment in favor of defendant, Kane County Collector David J. Rickert, on plaintiff's complaint, which sought an injunction against defendant's practice of refusing to allow property tax payment by specification and a declaration that defendant's refusal to accept payment by specification violated the Property Tax Code (Code) (35 ILCS 200/1 et seq. (West 2004)), the due process clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2), and the equal protection guarantees of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). For the reasons that follow, we affirm.

Though the parties' cross-motions for summary judgment include transcripts of depositions from officials involved in the tax assessment and collection process as well as other documentary evidence, the parties do not contest the relevant facts. Accordingly, only a brief recitation of those facts is necessary for an understanding of the issues presented in this appeal. Bigelow, a housebuilder that sold homes to the individual plaintiffs, was in the practice of dividing its developments into several lots (each of which received its own property index number (PIN) from the Aurora Township assessor), dividing those lots into subparcels, building a home on each subparcel, and then selling the subparcels to its customers. The assessor would assign an individual PIN to each subparcel upon recording its conveyance. The customers would later pay the full year's property tax bill for their

---

[1]Bigelow-Aurora, LLC, John Prusko, Darren J. and April K. Finnegan, Michael Pfile and Heather Spring, Michael and Kirsten Hammond, Verdie Samko, Peter N. Rosch, Angela Kokkinos, Kristi and Ryan Stone, Dekalvin and Charlene Epps, Michael Sanders and Jana Blumberg, Keith P. and Nicole Campbell, Bryan and J. Sirota, Nick and Lauren Marasco, and Sherman and Marsha Carter.

respective subparcel, but, at the closing of the sale of each subparcel, Bigelow would give its customers a credit for the portion of the year Bigelow had owned the property.

In Kane County, if a parcel is divided after September 10 of a given year, the new PINs for the divided parcels do not become effective for taxation purposes until the next assessment year. Normally, then, since subparcels sold by Bigelow after September 10 would not be assigned individual PINs (and, instead, the lot containing all of the subparcels would remain under one PIN), Bigelow, as owner of the lot, would have been required to pay the year's taxes for the entire lot, including taxes for any already-sold subparcels within the lot. In previous years, defendant accommodated Bigelow by allowing tax payment by specification, a procedure by which taxpayers who own separate portions of a larger property (with a single PIN) may specify their individual tax liability for their portions of the parcel and pay their taxes separately. However, in 2004, defendant stopped accepting payment by specification. (In his deposition, which was attached to defendant's motion for summary judgment, defendant stated that Bigelow was the only taxpayer that requested or used payment by specification prior to his decision to stop accepting it.) Thus, in 2004 and 2005, for any subparcels Bigelow sold after September 10 of the previous year, defendant sent Bigelow a bill for taxes on the undivided lots containing the subparcels. Bigelow then collected taxes from the homeowners in order to satisfy the tax liability on the property, but it did so only after several parcels were placed in a tax sale due to their tax delinquency and after interest and penalties on the delinquency had been incurred.

Plaintiffs filed a complaint seeking to recover their interest and penalty damages and also to require defendant to accept payment by specification, but, after both parties filed motions for

summary judgment, the trial court entered summary judgment in favor of defendant. After the trial court denied their motion to reconsider, plaintiffs timely appealed.

All of plaintiffs' appellate arguments are directed at the propriety of the trial court's decision to grant summary judgment in favor of defendant. "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 216 Ill. 2d 294, 305 (2005). "The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered." American Family Mutual Insurance Co. v. Page, 366 Ill. App. 3d 1112, 1115 (2006). The propriety of a trial court's decision to grant summary judgment presents a question of law, which we review de novo. Page, 366 Ill. App. 3d at 1115.

At the outset, we note that defendant devotes a considerable portion of his appellate brief to the argument that, regardless of the merits of plaintiffs' contentions, we should not consider them, because plaintiffs did not follow the proper procedure under the Code for tax objections. See 35 ILCS 200/23--5 (West 2004) (outlining procedure for payment of taxes under protest). Plaintiffs respond that this procedure does not apply, because they are not objecting to either the imposition or the amount of taxes but rather to defendant's method of collecting taxes. However, we do not reach this issue, because, as discussed below, even assuming this action to be a proper vehicle for plaintiffs' complaint, we reject plaintiffs' arguments on their merits.

Plaintiffs' first argument is that defendant's refusal to allow payment by specification violates his duties under the Code. Plaintiffs contend that defendant's "utter refusal to act even on reasonable requests" is an "abdication of his duties" under the Code, because it constitutes his failure to make a policy to review requests for payment by specification. Before determining whether defendant's actions violate the Code as plaintiffs contend, we note our disagreement with their characterization of the facts. Defendant does, in fact, have a policy regarding payment by specification: he does not allow it in any instance. Therefore, defendant is not "refus[ing] to act" on plaintiffs' requests for payment by specification; rather, he is denying their requests. Likewise, defendant's policy is not, as plaintiffs contend, a "refusal to exercise his discretion." Defendant's policy is an exercise of his discretion; the policy simply leads to a result plaintiffs do not favor. The question presented here is whether this policy violates the Code. That question turns on our interpretation of the relevant provision of the Code.

Section 20–210 of the Code, which governs payment by specification, provides as follows:

"Taxes payable in installments; payment under specification. Except as otherwise provided in Section 21--30, current taxes shall be payable in 2 equal installments. *** The collector may receive taxes on part of any property charged with taxes when a particular specification of the part is furnished. If the tax on the remainder of the property remains unpaid, the collector shall enter that specification in his or her return, so that the part on which the tax remains unpaid may be clearly known. The tax may be paid on an undivided share of property. In that case, the collector shall designate on his or her record upon whose undivided share the tax has been paid." (Emphasis added.) 35 ILCS 200/20--210 (West 2004).

The cardinal rule of statutory interpretation is to ascertain and give effect to the legislative intent, and the best indication of the legislative intent is the language used in the statute. In re Application of the County Treasurer, 351 Ill. App. 3d 244, 248 (2004). A court must give statutory language its plain and ordinary meaning, and a court cannot read limitations or conditions into a statute when none are expressed. In re Application of the County Treasurer, 351 Ill. App. 3d at 248. "Where the language is unambiguous, the statute must be given effect without resort to other aids of construction." Krautsack v. Anderson, 223 Ill. 2d 541, 553 (2006). The word "may" ordinarily connotes discretion. Krautsack, 223 Ill. 2d at 554. Though plaintiffs criticize defendant's reliance on the "mere fact the statute says 'may receive,' " they do not contest that the above statutory language unambiguously confers to collectors the discretion to allow or refuse payment by specification. Accordingly, based on the plain language of section 20--210, we conclude that collectors have discretion under the Code to accept or deny payment by specification.

Further, even if the above statutory language were ambiguous, and we were forced to consult extrinsic aids to construction such as legislative history and debate, we would reach the same result. See Advincula v. United Blood Services, 176 Ill. 2d 1, 19 (1996) ("Valuable construction aids in interpreting an ambiguous statute are the provision's legislative history and debates").

Regarding the legislative history, "[w]here the legislature has made a material change in a statute, *** the presumption is that 'the amendment was intended to change the law.' " Board of Trustees of Southern Illinois University v. Department of Human Rights, 159 Ill. 2d 206, 213 (1994), quoting State of Illinois, Secretary of State v. Mikusch, 138 Ill. 2d 242, 252 (1990). Section 20--210 was amended, effective July 24, 2003 (Pub. Act 93--366, §5, eff. July 24, 2003). Prior to the amendment, the statute provided that "[t]he collector shall receive taxes on part of any property

charged with taxes when a particular specification of the part is furnished." (Emphasis added.) 35 ILCS 200/20--210 (West 2002). With Public Act 93--366, the legislature revised the statute to provide, as quoted above, that "[t]he collector may receive taxes on part of any property charged with taxes when a particular specification of the part is furnished." (Emphasis added.) 35 ILCS 200/20--210 (West 2004).[2] We must presume that the legislature substituted the language indicating that a collector "may receive" payment by specification to effect a change from the prior law that a collector "shall receive" payment by specification. Especially given that the word "shall" is commonly deemed mandatory (e.g., Esmail v. Department of Revenue, 371 Ill. App. 3d 778, 781 (2007)) and "may" is generally deemed discretionary, we presume that the change the legislature intended was to convert the acceptance of payment by specification from a mandatory duty to a discretionary decision when it enacted the current version of section 20--210.

The legislative debate surrounding Public Act 93--366 supports our view. Senator Jacobs, the sponsor of the bill that led to the above amendment, described the bill as follows just before the Senate voted to pass it into law:

"[This bill] is an initiative of the Illinois County Treasurers' Association. The bill resolves problems encountered by county treasurers when, for an example, a property owner grants an interest in a property and then presents that specification to the treasurer and requests the property tax bill be broken up amongst all those with interest in the property. Currently a county treasurer must allocate the tax bill amongst the interest-holders. This places an administrative burden on some of those municipalities in preparing multiple tax bills for the

---

[2]Defendant testified in his deposition that the decision to stop allowing payment by specification was a reaction to this statutory amendment.

same property, and this will leave it to a decision of the county treasurer's discretion." 93d Ill. Gen. Assem., Senate Proceedings, May 6, 2003, at 178 (statements of Senator Jacobs).

Based on the above, we conclude that section 20--210 of the Code grants collectors discretion as to whether to allow payment by specification. Thus, a policy of refusing such payment is not by itself a violation of a collector's duties under the statute.

Plaintiffs' second argument on appeal is that defendant's policy of refusing to accept payment by specification constitutes an abuse of his official discretion, justifying judicial intervention. Based on their premise that courts may overturn an official decision where it constitutes an abuse of discretion, plaintiffs then contest the validity of several of defendant's justifications for his policy of refusing payment by specification, and they urge us to reverse defendant's decision based on the purported flaws in defendant's rationale. We decline to do so. For the reasons we discuss below, addressing plaintiffs' arguments on the validity of defendant's reasoning would take us down a path we cannot, and should not, travel.

Illinois law, as it is commonly expressed, gives superficial credence to plaintiffs' proposed approach. A typical case, Arnold v. Engelbrecht, 164 Ill. App. 3d 704 (1987), describes the judiciary's role in reviewing official decisions as follows:

> "Normally, discretionary acts of a public official in exercising his duties are not subject to review by the judiciary in an injunction action. An exception to this rule arises in a case when the public official's acts are arbitrary and capricious and he thus abuses his discretion. [Citation.] Additionally, injunctive relief will lie to control discretionary actions of public officials if fraud, corruption or gross injustice is shown." Arnold, 164 Ill. App. 3d at 707.

See also, e.g., Local 1894 v. Holsapple, 201 Ill. App. 3d 1040, 1049 (1990) ("Injunctive relief will be granted when a public official's acts are arbitrary and capricious and he abuses his discretion, or if fraud, corruption, or gross injustice are shown to underlie his discretionary actions"); Illinois Federation of Teachers v. Board of Trustees, 191 Ill. App. 3d 769, 773 (1989) (discretionary acts of public officials reviewable only if unlawful or if "the public official's acts are arbitrary and capricious and he thus abuses his discretion or if fraud, corruption, or gross injustice underlying the discretionary act is shown"). Here, plaintiffs do not assert the presence of fraud, corruption, or gross injustice; rather, they contend that defendant's policy is arbitrary and capricious because his reasons for implementing it are unsound. We therefore focus our inquiry on the meaning of the phrase "arbitrary and capricious" in this context.

Initially, we must differentiate between two types of judicial review: judicial review of a quasi-judicial administrative act, and judicial review of a discretionary official act. Though cases reviewing acts of official discretion often intermingle the standards for both (see, e.g., Dorfman v. Gerber, 29 Ill. 2d 191, 196 (1963) (invoking both standards in reviewing an act of official discretion)), the difference is critical. Most administrative discretion in quasi-judicial acts is tempered by the constraints of judicial review (see 735 ILCS 5/3--101 et seq. (West 2006) (Administrative Review Law)), under which a court may reverse an agency determination where, inter alia, its factual findings are against the manifest weight of the evidence (e.g., City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205 (1998)). However, here, plaintiffs do not appeal from an administrative determination pursuant to an adjudicatory proceeding; rather, they challenge defendant's pure application of official discretion. Thus, we focus our inquiry on the issue of the extent of judicial review of a purely discretionary official decision, and not on the issue of the extent

of judicial review of an adjudicatory agency determination. See R. Lincoln, Executive Decisionmaking by Local Legislatures in Florida: Justice, Judicial Review & the Need for Legislative Reform, 25 Stetson L. Rev. 627, 671 (1996) (distinguishing between original actions against an official and judicial review of quasi-judicial executive action) (hereinafter, Lincoln).

We trace the "arbitrary and capricious" language in the above cases to our supreme court's decision in People ex rel. Woll v. Graber, 394 Ill. 362 (1946). As the supreme court stated in Graber:

"The general doctrine is well established that an officer to whom public duties are confided by law is not subject to the control of the courts in the exercise of the judgment and discretion which the law gives to him as a part of his official functions; the reason for this being that the law reposes this discretion in him for that occasion and not in the courts. [Citations.] Where a statute gives a discretionary power to an officer, upon his own opinion of certain facts, it is a sound rule of construction that he is the sole and exclusive judge of the existence of those facts. [Citations.] The courts are careful of encroaching upon the discretionary power of a public officer, and if reasonable doubt exists as to the question of discretion or want of it, the courts will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer. [Citation.] The courts do not sit in judgment upon questions of administrative discretion. A court cannot substitute its discretion for that of executive officers in matters belonging to the proper jurisdiction of the officers. [Citation.] It cannot, under the guise of exerting judicial power, assume to exercise the discretion which the people, acting through their representatives in Congress, have lodged in administrative officers and agents. The powers of government, both National and State, are divided into three departments]--legislative, executive and judicial. Neither of these departments is

subordinate to or can assume overlordship of either of the others. The domain of the judiciary is in the field of the administration of justice under the law. It interprets, construes and applies the law, but it does not interfere with the conduct of government by entering into a field of conflict for the control of executive discretion by judicial action. It does not intermeddle with the execution of discretionary powers vested in the executive or administrative officers, in the absence of abuse or arbitrary or capricious exercise of such power on the part of the officers." Graber, 394 Ill. at 370-71.

Though much of the above excerpt leads us to believe that courts may not, in almost all circumstances, interfere with official discretion, the last quoted sentence, which would allow judicial interference in cases of arbitrary or capricious use of official power, seems at first blush to contravene most of the principles that precede it. Given this apparent contradiction, we must focus on the principles underlying judicial review of official discretionary action to determine precisely what the supreme court meant when it indicated, in the above context, that such action may be questioned by the judiciary where it is arbitrary or capricious.

The power of the judiciary to review the discretionary decision at issue here turns on principles of separation of the powers of the three branches of government. Under the Illinois Constitution, "[t]he legislative, executive and judicial branches are separate" and "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, §1. The constitution provides the legislature "the exclusive power to raise revenue by law" (Ill. Const. 1970, art. IX, §1), and the legislature, in turn, imposed on the county collector the power and duty to collect property taxes as part of the property tax execution scheme (see 35 ILCS 200/20--5 (West 2006) ("[e]very

\*\*\* collector \*\*\* shall prepare tax bills"); see also Town of the City of Peoria v. O'Connor, 85 Ill. 2d 195, 197-207 (1981) (describing Property Tax Code)).

Where the legislature leaves a matter to executive discretion, which, as discussed above, the legislature did here when it adopted the amended version of section 20--210 of the Code, the judiciary may not interfere with such discretion under normal circumstances without offending the principle of separation of powers. See People v. Sales, 195 Ill. App. 3d 160, 162 (1990) (trial court's ordering Secretary of State to exercise discretion in a particular way violated the separation of powers doctrine); see also People v. City of Chicago, 234 Ill. 416, 421 (1908), quoting City of Aurora v. Schoeberlein, 230 Ill. 496, 504 (1907) (judicial review of evidence in investigations of civil service commission " 'would be the exercise of executive powers, which the separation of departments of the government precludes the court from exercising' "); United States v. George S. Bush & Co., 310 U.S. 371, 380, 84 L. Ed. 1259, 1262-63, 60 S. Ct. 944, 946 (1940) ("For the judiciary to probe the reasoning which underlies [an application of administrative discretion] would amount to a clear invasion of the legislative and executive domains"); In re Application of Texas Co., 27 F. Supp. 847, 850 (E.D. Ill. 1939) ("The executive official, in the proper discharge of his duties under the constitution, is as independent of the courts as he is of the legislature").

Though an act of official discretion is subject to some judicial review, a court exercising such review must heed the line separating the powers of the judiciary from the powers of the remaining branches of government. The role of the judiciary is limited to construing the constitution and determining whether its provisions have been disregarded by any of the branches of government (Rock v. Thompson, 85 Ill. 2d 410, 418 (1981)) and to interpreting the laws of the state. It stands to reason, then, that a court should concern itself with discretionary acts of the other branches of

government only where such acts may violate the law or where the empowering legislative act calls for such judicial review. It is in this context that the above-quoted exception arises to allow review of an official act where it is arbitrary or capricious, or where there is a showing of fraud, corruption, illegality, or gross injustice. In this context, it is possible to reconcile the above reference to the "arbitrary or capricious" standard with the principle that courts may not independently evaluate the factual basis for an act of official discretion only if the phrase "arbitrary and capricious" is interpreted very narrowly.

The "arbitrary or capricious" standard must be applied in light of the limited purview prescribed the judiciary by the separation of powers doctrine--the judiciary must limit itself to infringing on official discretion only where that discretion can be shown to have violated the law. See In re Application of Texas Co., 27 F. Supp. at 850 ("The judiciary can only inquire whether the means utilized in the execution of a power granted are forbidden by the constitution. It cannot go beyond that inquiry without intrenching upon the domain of another department of government"). The situations commonly recited as allowing judicial interference with the application of official discretion--cases of illegality, fraud, or arbitrary or capricious decision making--can all be seen to fall within this single inquiry into the legality of the official decision. This idea is most readily apparent when applied to the concept that official discretion may be overturned where exercised illegally (or, similarly, where exercised fraudulently), but the "arbitrary or capricious" standard in this context may also be seen to contemplate review only for legality. Cf. Application of Texas Co., 27 F. Supp. at 850 (if administrative officials exercise discretion "in such an arbitrary or unjust and discriminating manner as clearly to deny to individuals their [constitutional rights], the courts may intervene, and they may hold unconstitutional any attempt upon the part of the legislature to vest in administrative officials

a discretion that is essentially arbitrary in character"). Indeed, if it were not interpreted in such a way, and the "arbitrary or capricious" standard were instead to be interpreted in this context to refer to a decision " 'not supported by facts' " (Lincoln, 25 Stetson L. Rev. at 673, quoting Agrico Chemical Co. v. Department of Environmental Regulation, 365 So. 2d 759, 763 (Fla. 1978)), courts would be forced to entertain broad, essentially de novo, review of acts of executive discretion to determine whether they were warranted by the facts. This is precisely the type of "intermeddl[ing] with the execution of discretionary powers vested in the executive" (Graber, 394 Ill. at 370-71) that the separation of powers doctrine dictates courts must avoid. Whatever the phrase means in other contexts, "arbitrary or capricious" abuse of executive power in the context of review of official discretion must be understood to refer only to illegal conduct. Absent a broader legislative mandate for review, it is this type of arbitrary official decision that the judiciary may overturn without infringing on the power of the legislative or the executive branch of government. (The intensity of the judicial inquiry would heighten to the extent the legislature provides for more searching review by, for example, enacting standards under which the official discretion must be exercised or making the official decision subject to the Administrative Review Law, because such a provision would simultaneously decrease the official's discretion and demonstrate legislative intent to involve the judiciary in the decision).

When reviewing an act of official discretion for abuse, without direction from the legislature to examine the decision more closely, a court may overturn the decision only where it does not comport with the law because it contravenes a statute or constitution (or does not comport with the relevant enabling statute). Absent some evidence of illegality, a court will be satisfied that an executive decision was not arbitrary or capricious, and it will not inquire further into the propriety

of the reasoning behind the decision (so long as the reasoning and decision are not, themselves, illegal). In this sense, our supreme court's statement that abuse of discretion "is the most deferential standard of review--next to no review at all" (In re D.T., 212 Ill. 2d 347, 356 (2004)) is particularly apt.[3]

Our view is consistent with the supreme court's decision in Greer v. Illinois Housing Development Authority, 122 Ill. 2d 462 (1988). There, a group of homeowners living near a proposed development brought suit against the Housing Development Authority on the ground that the Authority had violated its duties by providing funding for a development for low income tenants and had arbitrarily changed its policy. Greer, 122 Ill. 2d at 470-86. The Authority responded by arguing, among other things, that its decision was not subject to judicial review. Greer, 122 Ill. 2d at 486.

The supreme court, which was called upon to review an administrative decision (rather than an act of pure official discretion, as is at issue here), noted the distinction between reviewability, or the area of judicial review, and standard of review, or the level of judicial involvement in that area. Greer, 122 Ill. 2d at 495-96. The supreme court began by determining whether the agency determination was reviewable, which was a question of statutory interpretation directed at the question of whether the legislature intended the type of decision at issue to be reviewable. Greer, 122 Ill. 2d at 497. Though "it is clear that most agency actions are presumed reviewable in the absence

---

[3]Here, our review is even more limited (if that is possible) than that which the supreme court described in D.T., because we do not have oversight of applications of official discretion in the same way we have oversight of lower courts' applications of judicial discretion. The discussion of Greer below illustrates this difference.

of some express statutory prohibition of review, or at least in the absence of language which commits the decision to unreviewable agency discretion," courts must look to several factors to determine legislative intent in this regard. Greer, 122 Ill. 2d at 497, citing Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 18 L. Ed. 2d 681, 687, 87 S. Ct. 1507, 1511 (1967). "Whether, and to what extent, a relevant statute precludes judicial review is to be determined by its express language, the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Greer, 122 Ill. 2d at 497-98, citing Block v. Community Nutrition Institute, 467 U.S. 340, 345, 81 L. Ed. 2d 270, 275-76, 104 S. Ct. 2450, 2453-54 (1984). "Of particular importance is whether the statute contains standards, goals, or criteria by which a court may evaluate agency action." Greer, 122 Ill. 2d at 498, citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 28 L. Ed. 2d 136, 150, 91 S. Ct. 814, 820 (1971).

The express language and legislative history behind section 20--210 of the Code are both discussed above, and they indicate the legislature's intent to leave to the discretion of a collector the decision as to whether to accept payment by specification. The Code provides no standards, goals, or criteria by which to evaluate a collector's decision in this regard. Further, this is not the type of agency determination reviewed in Greer; rather, the issue in this case is review of an official's discretionary decision as to how to perform his duties. We conclude, then, that, under Greer, defendant's application of discretion here is not reviewable for the purpose of determining whether his purported reasoning is sound or wise. Of course, as noted above, even where the legislature does not provide for any judicial review, courts must intercede in cases of illegality.

Though the above conception of judicial review of official discretion is rarely if ever explicitly articulated in Illinois case law, it is often implicitly observed. For example, in Arnold, the court stated

that an official decision may be reversed where "the public official's acts are arbitrary and capricious and he thus abuses his discretion." Arnold, 164 Ill. App. 3d at 707. However, the court then upheld the official action as "an exercise of [defendant's] discretion and personal judgment." Arnold, 164 Ill. App. 3d at 707. Likewise, in Illinois Federation of Teachers, the court noted that official discretion may be overturned where arbitrarily or capriciously exercised, but it then reviewed the official action in question to determine whether it exceeded the official's legal authority. Illinois Federation of Teachers, 191 Ill. App. 3d at 773-74.

Two cases upon which plaintiffs rely, both in their written briefs and at oral argument, also implicitly observe the above principles. In Howell v. Snyder, 326 Ill. App. 3d 450 (2001), a prisoner challenged the policy of the Director of the Department of Corrections (DOC) to deny good-time credit against the sentence of any inmate who entered prison with a prior charge or conviction of domestic battery or a pending order of protection. Howell, 326 Ill. App. 3d at 451-52. The appellate court noted that the Director's policy of denying credit "may give rise to a claim for mandamus where it amounts to a refusal to exercise discretion." Howell, 326 Ill. App. 3d at 453. The court then observed that the Director's ability to apply policies "is not unlimited," and it recounted both the constitutional limits on the Director's authority and the statute governing good-time credit. Howell, 326 Ill. App. 3d at 453. Because the relevant statute assigned the Director purview over the conduct of prisoners only while in DOC custody, and not before then, the court concluded that "the Director's unwritten policy violates the statute, and accordingly the Director's application of the policy constitutes a refusal to exercise discretion for which mandamus would lie." Howell, 326 Ill. App. 3d at 454.

Though plaintiffs here seize on and analogize the language from Howell that a policy may give rise to a claim where "it amounts to a refusal to exercise discretion," a full reading of Howell demonstrates that it allowed judicial interference with the Director's policy because the policy violated the relevant enabling statute. This is consistent with the approach we detail above. Further, the court in Howell expressly disavowed plaintiffs' argument when it reasoned that "the application of a policy 'across the board' does not transform it into a nondiscretionary policy." Howell, 326 Ill. App. 3d at 453.

The second case upon which plaintiffs rely, Guzzo v. Snyder, 326 Ill. App. 3d 1058 (2001), employed a similar analysis. There, as in Howell, a prisoner challenged the Director's policy of denying good-time credit to inmates who had been arrested for domestic battery. Guzzo, 326 Ill. App. 3d at 1060. The court in Guzzo noted that the formulation of a good-time policy was within the Director's discretion, but that the discretion was "restricted" by both the enabling statute and the related parts of the Illinois Administrative Code. Guzzo, 326 Ill. App. 3d at 1062. The appellate court held that the Director's policy was an abuse of official discretion, both because it was unwritten despite the Administrative Code's requirement that agencies clearly define their standards for exercising discretion and because it violated the requirement that any factors the Director considers be connected with the purposes of encouraging inmate service and promoting prison discipline. Guzzo, 326 Ill. App. 3d at 1062-63. The court further held that mandamus was appropriate because the Director's policy was "not an articulated standard and [was] not in accordance with [DOC] rules." Guzzo, 326 Ill. App. 3d at 1064. Again, this decision was based on the official's failure to adhere to the laws that authorized the discretion being challenged.

We limit our review of defendant's discretion in accordance with the above-discussed principles. Defendant has offered several reasoned bases for his decision, including administrative efficiency. Plaintiffs do not assert that those bases made his decision illegal or that they were pretext for actual bases that made his decision illegal. Plaintiffs question the wisdom of his decision and argue that his bases were incorrect. But regardless whether defendant's decision was wise or his bases correct, defendant has within his discretion the power to accept or decline payment by specification as long as he does not violate the law. Plaintiffs have not conjured any allegation of illegality attending defendant's exercise of discretion here, and without such an allegation (and proof thereof), plaintiffs' challenge to that exercise of discretion must fail.[4]

Based on the above discussion, we reject plaintiffs' argument that defendant's decision not to accept payment by specification must be reversed on the basis that it constituted an abuse of his official discretion.

For the same reason, we reject plaintiffs' argument that summary judgment was inappropriate because there was at least a question of fact as to the viability of defendant's rationale for denying payment by specification. The above principles dictate that defendant's decision need only be legal. Thus, any purported question of fact as to the viability of defendant's reasoning is irrelevant. In short, in order to precipitate judicial review of defendant's discretionary act, plaintiffs would have to assert more than that they disagree with defendant's decision; they must assert that it is unlawful and thus exceeds his discretion. They have not done so here.

---

[4]Because plaintiffs do not challenge defendant's decision as illegal, we do not consider what happens when an executive offers no explanation in the face of a legal challenge to his or her exercise of discretion.

Plaintiffs' third argument on appeal is that defendant fundamentally misunderstands payment by specification because he equates it with a partial payment. Even assuming such a misunderstanding could amount to grounds to interfere with defendant's policy, we would reject plaintiffs' argument. Plaintiffs insist that payment by specification is "not simply a partial payment," as defendant suggests. However, we agree with defendant's description of payment by specification. As plaintiffs note, section 20--210, quoted above, describes payment by specification as "taxes on part of any property charged with taxes when a particular specification of the part is furnished." (Emphasis added.) 35 ILCS 200/20--210 (West 2004). By definition, payment by specification entails payment on a portion of a particular property, and, therefore, it entails a partial payment of the tax on the property. Plaintiffs urge that payment by specification requires payment of "the full amount of taxes attributable to [a] Subparcel." However, the subparcels are not divided for tax purposes, and, therefore, a full payment on a subparcel is a payment of the tax for only part of a property, or, put another way, is only a partial payment.

Finally, plaintiffs assert that defendant's policy of refusing payment by specification violates guarantees of due process and equal protection provided by the United States and Illinois Constitutions. The essence of plaintiffs' due process argument is that defendant's refusal to accept payment by specification bears no rational relationship to the state interest in collecting property taxes. See Crocker v. Finley, 99 Ill. 2d 444, 456 (1984) (legislative act violates due process if it does not bear a reasonable relationship to the public interest sought to be protected, and due process limits the police power only to the extent it is arbitrarily or unreasonably used). Plaintiffs attempt to invoke the rational-basis test normally associated with substantive due process review of a legislative action. However, our employing that type of review here would undermine all that we have said above

regarding the limitations on judicial interference with executive discretion. Plaintiffs' position overlooks the fundamental differences between substantive due process review of an executive, as opposed to a legislative, action. "[W]hen a plaintiff challenges the validity of a legislative act, substantive due process typically demands that the act be rationally related to some legitimate government purpose." Nicholas v. Pennsylvania State University, 227 F.3d 133, 142 (3rd Cir. 2000). "In contrast, when a plaintiff challenges a non-legislative state action ***, we must look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution." Nicholas, 227 F.3d at 142. "If the interest is not 'fundamental,' *** the governmental action is entirely outside the ambit of substantive process." Nicholas, 227 F.3d at 142. Here, plaintiffs make no argument that the right to pay taxes by specification is fundamental. Therefore, their substantive due process argument fails.[5]

As for plaintiffs' equal protection argument, "[t]he threshold inquiry in equal protection analysis is whether similarly situated persons are treated dissimilarly." Brazas v. Property Tax Appeal Board, 339 Ill. App. 3d 978, 984 (2003). Here, defendant treats all taxpayers similarly--he does not allow payment by specification, regardless of who requests it. Therefore, plaintiffs' equal protection argument fails.

---

[5]Nicholas interpreted the United States Constitution, not the Illinois Constitution. However, plaintiffs draw no distinction between the substantive due process rights they create, and we therefore consider them in tandem. See People v. Kizer, 365 Ill. App. 3d 949, 960-61 (2006) (concluding that due process clause of United States Constitution and due process clause of Illinois Constitution should be considered in lockstep).

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

CALLUM and ZENOFF, JJ., concur.