# Illinois Official Reports

## Appellate Court

---

### *State v. Hitachi, Ltd.*, 2021 IL App (1st) 191815

---

| | |
|---|---|
| Appellate Court Caption | THE STATE OF ILLINOIS, by Its Attorney General, Kwame Raoul, Plaintiff-Appellee, v. HITACHI, LTD.; HITACHI DISPLAYS, LTD.; HITACHI ELECTRONIC DEVICES (USA) INC.; LG ELECTRONICS, INC.; LG ELECTRONICS USA, INC.; LG ELECTRONICS TAIWAN TAIPEI COMPANY, LTD.; PANASONIC CORPORATION; MATSHUSITA ELECTRONIC INDUSTRIAL COMPANY M., LTD.; PANASONIC CORPORATION OF NORTH AMERICA; MT PICTURE DISPLAY, COMPANY, LTD.; KONINKLIJKE PHILIPS ELECTRONICS N.V.; PHILIPS ELECTRONICS NORTH AMERICAN CORPORATION; PHILIPS ELECTRONICS INDUSTRIES (TAIWAN), LTD.; SAMSUNG DISPLAY DEVICE COMPANY, LTD.; SAMSUNG SDI AMERICA, INC.; TOSHIBA CORPORATION; TOSHIBA AMERICA, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; and TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., Defendants (SIB FIXED COST REDUCTION COMPANY, LLC, Appellant). |
| District & No. | First District, Third Division<br>No. 1-19-1815 |
| Filed | March 17, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-35266; the Hon. Sanjay T. Tailor, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|

| Counsel on Appeal | Anthony S. DiVincenzo and Robert J. Stein, of DiVincenzo Schoenfield Stein, of Chicago, for appellant. |
|---|---|
|  | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellee. |

| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Justices Ellis and Burke concurred in the judgment and opinion. |
|---|---|

## OPINION

¶ 1     This appeal arises from a *parens patriae* action brought by the State on behalf of Illinois indirect purchasers of products containing cathode ray tubes (CRTs), alleging violations of the Illinois Antitrust Act (Act) (740 ILCS 10/1 *et seq.* (West 2018)). The appellant-intervenor, SIB Fixed Cost Reduction Company, LLC (SIB), filed claims on behalf of certain businesses that purchased CRT products, and those claims were rejected by the claims administrator as noncompliant. SIB sought court approval of the claims, and after a hearing, the court determined that SIB's submissions failed to comply with the published claims procedures and denied SIB's request to approve them. In this appeal, SIB contends that the circuit court erred and abused its discretion by denying its claims.

¶ 2     The record shows that on September 18, 2012, under its *parens patriae* authority, the State brought a complaint for injunctive and other relief against various manufacturers and distributors of CRTs. CRTs are pieces of technology that were used in TV and computer monitor displays before other technologies—particularly, LCD, Plasma, and LED displays—largely replaced them. The action was brought on behalf of qualifying Illinois individuals and businesses that purchased TVs and monitors containing CRTs between March 1, 1995, and November 25, 2007. The State amended its complaint thereafter, on May 17, 2013.

¶ 3     Defendants fell into six groups related to Hitachi, Ltd. (Hitachi), LG Electronics, Inc. (LG), Koninklijke Philips Electronics N.V. (Philips), Samsung Display Device Company, Ltd. (Samsung), Panasonic Corporation (Panasonic), and Toshiba Corporation (Toshiba). The State alleged that defendants violated the Act by conspiring to fix, raise, maintain, or stabilize the prices of CRTs, thus causing unlawfully inflated prices for CRTs that were passed on as overcharges to Illinois consumers.

¶ 4     Throughout 2016 and 2017, the State and four groups of defendants—namely Hitachi, LG, Philips, and Samsung—settled the State's claims resulting in a fund of approximately $36 million for distribution to eligible Illinois consumers. In November 2017, those parties filed a

joint motion for approval of a notice plan, including notice by publication and proposed "short form" and "long form" notices to potentially eligible purchasers.

¶ 5    Both the short form and long form notices advised Illinois consumers of the litigation and settlements, including information about participating or opting out. They advised that the maximum amount recoverable would be $20 per television and $60 per monitor and that no distribution would occur until after trial or settlement with the defendants who had not yet settled. Both notices also included a phone number and website for obtaining further information.

¶ 6    The one-page short form notice included a section titled "How can I get a Payment?," which indicated the deadline for submission of a claim form, and further provided:

> "Claims filed by someone else on behalf of or as assignee of the person or entity who actually purchased the CRT television or monitor will not be accepted or paid. For individuals, the name of the person verifying the claim must match that of the person making the claim. For businesses, the individual verifying the claim must be a duly authorized officer of the business. Verification provided by anyone else will be invalid."

¶ 7    The seven-page long form notice (notice) urged potentially affected consumers, in underlined print, to "Please read this notice carefully. Your legal rights are affected whether you act or don't act." The notice addressed the options available to eligible purchasers, specifically that they could choose to (1) "submit a claim" no later than July 12, 2018, to possibly receive a payment; (2) "exclude [them]self" from the litigation no later than March 12, 2018, which meant that they would receive no benefits from the settlement, but would retain any rights to sue defendants about the claims in the case; or (3) "do nothing," which meant that they would receive no payment and give up their rights to sue defendants about the claims.

¶ 8    The notice contained a section titled "How do I know if I may recover money in the Illinois Attorney General's *parens patriae* lawsuit?" In response to that question, the notice explained:

> "*Illinois consumers*: The Illinois Attorney General is seeking monetary damages incurred by any Illinois resident (person or business) that purchased a CRT television or monitor between March 1, 1995 and November 25, 2007, while residing in Illinois and *for their own use in Illinois and not for resale*. Therefore, if you purchased one or more CRT television[s] or monitor[s] between March 1, 1995 and November 25, 2007 while residing in Illinois (or, if you are a business, while you were headquartered or incorporated in Illinois), you may recover by filing a claim." (Emphases in original.)

¶ 9    Another section addressed claims submitted by someone other than the purchaser. It stated:

> "Can I have someone else submit a claim on my behalf?
>
> We will not accept or pay claims filed by someone else on behalf or as an assignee of the person or entity who actually purchased the CRT television or monitor. This means that when you submit your claim, the name and address of the claimant must match the name and address to which the payment is to be sent. If these names and addresses do not match, your claim will be invalid. For individuals, the name of the person verifying the information must match that of the person making the claim. For corporations or other business entities, the individual verifying the information must

be a duly authorized officer of the corporation or business entity. Verification provided by anyone else will be treated as an unverified claim and invalidated.

The process of filing a claim is designed to be straightforward. If you have any questions about how to file a claim, you can call the claims administrator at 1-800-XXX-XXXX for assistance."

¶ 10 The notice further cautioned: "In order to be a valid claim, your claim form must be complete at the time of filing. You should not leave any part of the claim form blank or include inaccurate information that you intend to update later."

¶ 11 The claim form, which was also submitted to the circuit court with the motion to approve the notice plan, repeated that "Illinois consumers (individuals and businesses) that purchased televisions or monitors containing CRTs from a retailer or someone other than the manufacturer of the component CRT are eligible to receive a payment from the settlement funds."

¶ 12 The claim form included two "eligibility questions": "Did you or your business buy one or more CRT televisions or CRT monitors in Illinois for your own use and not for resale between March 1, 1995 and November 25, 2007?" and, "At the time of this (these) purchase(s), did you reside in Illinois, or for businesses, were you incorporated in or were your headquarters in Illinois?" Following those questions, the form indicated: "If you answered 'Yes' to both Eligibility Questions, you are eligible to file a claim by completing the form below." Thereafter, the form asked the claimant to enter the total number of CRT TVs and monitors "you or your business purchased" and the claimant's name, address, and related information.

¶ 13 A final section required verification under penalty of perjury. By verifying on behalf of a business, a claimant confirmed the quantities purchased and that

"(i) I am duly authorized by this business to make this verification; (ii) this business purchased its CRT products for its own use and not for resale, and, (iii) at the time of the purchase(s) of all CRT televisions and/or CRT monitors claimed in this form [either] its headquarters was located in Illinois [or] it was incorporated in Illinois."

The verification further required: "For businesses, the individual verifying the information must be a duly authorized officer of the business. *Verification provided by anyone else will be treated as an unverified claim and invalidated*." (Emphasis in original.)

¶ 14 On November 20, 2017, the circuit court entered an order approving the proposed notice plan, and specifically approving the long and short forms of the settlement notice. The circuit court further ordered that "Claims must be filed by the claimant, and not by a third-party, with payments to go directly to the claimant." The court concluded that the "publication notice plan is preliminarily approved, and if implemented as planned, satisfies the requirements of due process."

¶ 15 In December 2017, the notices were published in various newspapers, journals, and websites. According to the affidavit of a representative of the claims administrator, over 30,000 timely claims were received. Following the deadline, the claims administrator began processing claims.

¶ 16 In early 2018, the State and remaining defendants, Toshiba and Panasonic, settled the State's claims, for a total of $11.2 million, increasing the settlement fund to approximately $47 million.

¶ 17    Meanwhile, SIB entered into purported assignment contracts with various businesses. The contracts were titled "SIB Class Action & Antitrust Claims Monitoring Agreement" and were between SIB and each "Client." The contracts contemplated that SIB would file claims for the Client as its "exclusive agent," and stated that the "Client hereby assigns and transfers all rights and interests in Claims, now existing or which may come to exist during the term of this agreement, to SIB." Under the contracts, SIB paid nothing to the Client unless a claim yielded a recovery, and, if there was a recovery, SIB agreed to pay the Client "50% of the proceeds collected." The contracts further provided that proceeds would be sent to SIB, which would then forward appropriate payments to the Client. The Clients additionally "agree[d] to execute and deliver such further documentation as reasonably needed to evidence this transaction and the basis of the claim to any court or claims administrator."

¶ 18    SIB ultimately submitted 62 claims to the claims administrator before the July 2018 deadline. In September 2018, SIB rescinded 50 of those claims, informing the administrator that it had "notice[d]" that the claims were for non-Illinois locations. Of SIB's remaining 12 claims, SIB only raises challenges to six of those claims in this appeal. Those claims include:

> 1. A claim submitted by SIB on behalf of purchaser Sysnetex, Inc., on January 2, 2018, for 30,000 monitors.
>
> 2. A claim submitted by SIB on behalf of purchaser Bandanas Missouri, LLC, on July 11, 2018, for 50 televisions and 50 monitors.
>
> 3. A claim submitted by SIB on behalf of purchaser JM Tool and Die, on July 9, 2018, for 5 televisions and 15 monitors.
>
> 4. A claim submitted by SIB on behalf of purchaser Huck Finn Clothes, Inc., on July 10, 2018, for 10 monitors.
>
> 5. A claim submitted by SIB on behalf of purchaser Brodersen Management Corp., on July 11, 2018, for 14 televisions and 42 monitors.
>
> 6. A claim submitted by SIB on behalf of purchaser The Esquiline on June 5, 2018, for 1350 televisions and 1350 monitors.

¶ 19    SIB submitted the claim forms as "SIB" or "SIB De[v]elopement" "on Behalf of," followed by the purchaser business name, or as the purchaser business name "c/o SIB Development." SIB listed its own South Carolina business address on the claim form, and not the address of the business that purportedly purchased the CRTs. The claim forms were verified by a SIB employee.

¶ 20    The claims administrator rejected the six claims at issue. On November 2, 2018, SIB received an e-mail for each advising that: "Your form has been rejected for the following reason(s): The Claim was submitted by someone else on behalf of, or as an assignee of the person or entity who actually purchased the CRT television(s) or monitor(s)."

¶ 21    On January 28, 2019, SIB petitioned to intervene and seek court approval of the claims. SIB sought intervention as of right under section 2-408(a)(2) and (a)(3) of the Code of Civil Procedure, allowing intervention as of right

> "(2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or a court officer." 735 ILCS 5/2-408(a)(2), (a)(3) (West 2018).

¶ 22    The State opposed SIB's petition to intervene, claiming that the petition was untimely and that SIB had no enforceable right to the relief sought.

¶ 23    On April 9, 2019, the court held a hearing on SIB's petition to intervene. After argument, the court allowed SIB to intervene, clarifying that it was not reaching the question of whether SIB "complied with the notice or not." Viewing that question as potentially dispositive, the court limited briefing on the merits to that issue.

¶ 24    SIB then filed its "motion to approve claims," also on April 9, 2019. It contended that there was "no legal justification for the State to arbitrarily discriminate against" assigned claims.

¶ 25    On April 23, 2019, the State filed an opposition to SIB's motion. The State argued that the motion should be denied because SIB failed to comply with the court-approved notice requirements. Specifically, the State asserted that the notice prohibited "claims filed by someone else on behalf or as an assignee of the person or entity who actually purchased the CRT television or monitor," and required the person or entity who "actually purchased the CRT television or monitor" to verify specific information about the claim. The State further alleged that requiring verification by the actual purchaser did not prohibit assignments and that there was a reasonable justification for the verification requirement—namely, "to reduce the opportunities for fraud and the administrative burden of protecting against such fraud, while ensuring that the rules applied equally to all claimants." The State also pointed out that purchaser businesses not headquartered or incorporated in Illinois were ineligible and SIB had admitted that it made at least 50 claims for companies that did not meet the residency requirement. The State argued that SIB's "lack of care in 'verifying' claims on behalf of others, exacerbates the costs of auditing claims and could create doubts about the integrity of the distribution of the settlement funds."

¶ 26    In its reply and amended reply, SIB argued that a lack of proper verification was not specified by the claims administrator for its denial of SIB's claims and that verification should not be considered by the circuit court. SIB further argued that SIB could properly execute the verification. It maintained that there was "no reason to assume" that SIB had "less knowledge of the claims than its assignors" because either would "have to rely on business records or other evidence to substantiate their claims." Finally, SIB acknowledged that some of the purchasers were not headquartered or incorporated in Illinois but asserted that those purchasers still should be deemed qualifying "Illinois residents" because they were "located and doing business in Illinois."

¶ 27    On August 8, 2019, the circuit court heard argument on SIB's motion to approve its claims. SIB repeated its contentions that the claims procedures improperly restricted assignments and that SIB was a proper "claimant" to verify the claim and could verify the claims based on business records. SIB further argued that the notice was confusing because it said that "you can't be an assignee," but defined that term as "when you submit the claim, the name and address of the claimant must match the address of the person to which the payment is going to be sent." The State argued that the notice was clear and explicitly stated that it would not accept or pay claims filed by someone else on behalf or as an assignee of the person or entity who actually purchased the CRT television or monitor. The State further argued that requiring the claim to be verified by the actual purchaser was reasonable and that, even if SIB could somehow be considered the claimant, its claims would fail because SIB itself was not an Illinois resident.

¶ 28    Following argument, the court concluded:

"I agree with the State on the language of the notice, that I don't think it's ambiguous. I think it's a matter of semantics. The State's position is not that assignment is not permitted. Rather, it's that in order to administer the process, it needs verification from the original purchaser in order to weed out legitimate claims from illegitimate claims. That's the purpose of the notice, and I think it's supported by the actual claim form itself.

Here, the claimant—that requirement was not complied with. So I am going to deny the motion by SIB to approve the claims."

¶ 29    That same day, the court entered a written order denying SIB's motion to approve claims "for the reasons stated in open court and on the record." The court further stated that "[a]ll matters concerning *** SIB having been resolved, the court finds that there is no just reason for delaying enforcement or appeal or both of this order *** pursuant to Rule 304(A) of the Illinois Rules of the Supreme Court."

¶ 30    SIB filed a timely notice of appeal on September 6, 2019. In this court, SIB raises several challenges to the circuit court's denial of its motion to approve its claims.

¶ 31    As stated above, this case involves a complaint under the Act filed by the Attorney General as *parens patriae* on behalf of all Illinois residents who indirectly purchased CRT products.

¶ 32    The Act prohibits anticompetitive conduct, including contracting or conspiring with competitors to fix or control prices. 740 ILCS 10/3(1) (West 2018). It permits "[a]ny person who has been injured in his business or property" by a violation of the Act to "maintain an action in the Circuit Court for damages, or for an injunction, or both, against any person who has committed such violation." *Id.* § 7(2). The Act specifically grants the Attorney General the authority to bring an action, as *parens patriae*, "on behalf of persons residing in this State, to recover the damages under this subsection." *Id.* The Act further provides, however, that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action parens patriae as provided in this subsection." *Id.*

¶ 33    "*Parens patriae* suits are a special form of action brought by a state on behalf of its residents generally to protect a 'quasi-sovereign interest' belonging to the state." *Addison Automatics, Inc. v. Hartford Casualty Insurance Co.*, 731 F.3d 740, 744 (7th Cir. 2013). Such suits are "brought by a government to vindicate interests beyond those of any particular victims," and the Attorney General is afforded discretion in its pursuit of a *parens patriae* action. See *id.* ("As with many actions taken by governments, the protection against excesses in the *parens patriae* context lies in the electoral process, not the procedural protections and fiduciary duties owed by private counsel and named plaintiffs in a class action."). Where the legislature leaves a matter to executive discretion, which, as discussed above, the legislature did here when it allowed the Attorney General to maintain a *parens patriae* action under the Act, the judiciary may not interfere with such discretion under normal circumstances without offending the principle of separation of powers. *Bigelow Group, Inc. v. Rickert*, 377 Ill. App. 3d 165, 173 (2007). Accordingly, a court may not overturn this type of discretionary executive action unless it "contravenes a statute or constitution (or does not comport with the relevant enabling statute)." *Id.* at 174-75.

¶ 34    The State argues that the circuit court's order declining to approve SIB's claims for failure to comply with the claims procedures should be reviewed for an abuse of discretion. SIB acknowledges that the court's order is "akin" to an order approving or denying the allocation

of a class action settlement fund, which is reviewed for an abuse of discretion (see *Quick v. Shell Oil Co.*, 404 Ill. App. 3d 277, 281-82 (2010)), and invokes the abuse of discretion standard in its arguments on appeal. Despite essentially agreeing that abuse of discretion review applies, SIB briefly contends that this appeal involves "issues of law which are addressed *de novo* in this Court." SIB, however, does not indicate what "issues of law" are involved and cites no legal authority for such a standard. Nonetheless, this court would reach the same conclusions under either standard of review.

¶ 35    Although not entirely clear, SIB's arguments appear to fall into two categories: first, that it actually complied with the approved claims procedures, and second, that the approved claim procedures were improper because they discriminated against the right to enter into assignment contracts. We will address each argument in turn.

¶ 36    SIB acknowledges that it filed its claims as a purported assignee of certain businesses that purchased CRT products and that its submissions were not verified by an officer of those businesses. Nonetheless, SIB contends that it actually complied with the claim requirements, because SIB—as assignee—was the proper entity to submit and verify the claims of its assignors. SIB argues that the notice required execution of a verification by the "claimant," which it asserts was SIB as the "legal owner of the claim." SIB also points out that the claim form required verification that the person submitting the form was "an officer of this business and duly authorized by this business to verify the contents of this claim," and argues that the claim forms were "properly submitted by a duly authorized officer of SIB, the business submitting the claim."

¶ 37    SIB's strained reading of the notice and claim form cannot be reconciled when those documents are read as a whole. Most significantly, the notice explicitly states:

> "We will not accept or pay claims filed by someone else on behalf or as an assignee of the person or entity who actually purchased the CRT television or monitor. *** For corporations or other business entities, the individual verifying the information must be a duly authorized officer of the corporation or business entity. Verification provided by anyone else will be treated as an unverified claim and invalidated."

¶ 38    The notice also included language indicating that the lawsuit applied to, and that claims could be made by, individuals and businesses that actually purchased the CRT products. In bold letters, the notice began, "*If You *** Bought* a TV or Monitor Containing a [CRT] *** This Lawsuit And Settlements May Affect You." (Emphasis added.) The notice goes on to explain: "*if you purchased* one or more CRT television or monitor between March 1, 1995 and November 25, 2007 while residing in Illinois (or, if you are a business, while you were headquartered or incorporated in Illinois), you may recover by filing a claim." (Emphasis added.)

¶ 39    Although SIB claims that it was a proper claimant to file the claim form, such an interpretation leads to absurd and illogical results and illustrates that SIB desires to be recognized as the "claimant" only when it suits its own purposes. For businesses, the form asked whether "you or your business b[ought] one or more CRT televisions or CRT monitors for your own use and not for resale" during the relevant time period. If SIB were construed as the "claimant," it would have to answer "no" to that eligibility question, as it did not claim to have personally purchased any CRT television or monitors. Instead, SIB relied on the purchases made by its "Clients" in answering this question. Similarly, the second eligibility question asked, for businesses, whether "you [were] incorporated in" or "headquarter[ed] in

Illinois." Similarly here, if SIB were the claimant, it would also have to answer this question in the negative, as it is a South Carolina corporation. SIB also answered this question by using the information of the purchasing businesses. SIB's claims were purportedly "verified" by the SIB employee who submitted them. If SIB were the "claimant," it would have been asserting, under penalty of perjury, that it had purchased the specified quantities of CRT products—although SIB had made no such purchases—and that it was headquartered or incorporated in Illinois—although it was not.

¶ 40　　Further confirming the absurdity of SIB's position, its proposed interpretation of a "claimant," would violate a fundamental rule governing assignments. If the assignee were considered the "claimant," a non-Illinois resident who purchased CRT products could circumvent the residency requirement by assigning the claims to an Illinois resident to bring the claims in its own name. An assignment cannot be used in this manner, as it would effectively give the assignee greater rights than the assignor. See, *e.g.*, *Kenny v. Kenny Industries, Inc.*, 2012 IL App (1st) 111782, ¶ 18 (an "assignee cannot, merely by virtue of the assignment, acquire any greater right or interest than the assignor possessed").

¶ 41　　Accordingly, we conclude that SIB did not follow the requirements specified in the notice and claim form.

¶ 42　　In anticipation of that conclusion, SIB next argues that the claim procedures were improper. Specifically, SIB contends that the denial of its claims violated SIB's property rights by "discriminating against assignments and assignees." SIB explains that the

> "crux of [its] appeal is that while the State of Illinois filed and settled this action, under its *parens patriae* authority, on behalf of all Illinois residents who purchased CRT products, the Circuit Court has abused its discretion by approving a settlement allocation plan which denied the rights of assignees to share in the settlement fund which included moneys obtained for settling *their* claims." (Emphasis in original.)

¶ 43　　SIB contends that the circuit court abused its discretion by "ignor[ing] the actual reason for the denial of SIB's submitted claims." Specifically, the court found that the State's position was "not that assignment is not permitted," but that verification by the original purchaser was necessary to "administer the process" and "weed out legitimate claims from illegitimate claims." SIB asserts that this reasoning ignores the plain language of the reasoning supplied by the claims administrator, which indicated that its forms had "been rejected for the following reason(s): The Claim was submitted by someone else on behalf of, or as an assignee of the person or entity who actually purchased the CRT television(s) or monitor(s)."

¶ 44　　We note, initially, that our review is of the circuit court's decision to deny SIB's motion to approve its claims; it is not a review of the reasoning provided by the claims administrator. Whether the claims administrator accurately and fully described the reasons SIB's claims were denied is of no consequence, so long as the circuit court's denial of SIB's motion was proper.

¶ 45　　Nonetheless, the reasoning of the claims administrator was not that the claims made by SIB were rejected because they had been assigned. Instead, the claims administrator's stated reason for denying SIB's claims was that they had been "*submitted by* someone else on behalf of, or as an assignee of," the actual purchaser. (Emphasis added.) Such language illustrates that the intent was to require the actual purchasers to submit their claim themselves. Indeed, as the State points out, the claims administrator could not have possibly known that SIB and the entities on behalf of which it filed claims were parties to a purported assignment agreement. The administrator would only know how SIB chose to identify itself on its claim forms,

specifically that it was submitting the claims on someone else's behalf. The claim procedures did not prevent assignments; they merely required that the actual purchasers submit claim forms and verify facts surrounding their purchases.

¶ 46 SIB briefly refers to its due process rights as having been violated, but cites no legal authority for that argument, other than general authority that persons may not be deprived of property without due process. Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires an appellant's brief to contain argument supported by citations to relevant authorities. "A failure to cite relevant authority violates Rule 341 and can cause a party to forfeit consideration of the issue." *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. Where an appellant has failed to support his or her arguments with citations to authority, this court will not research the issues on the appellant's behalf. See *id.* (noting that this court "is not a depository in which the appellant may dump the burden of argument and research" (internal quotation marks omitted)); *Skidis v. Industrial Comm'n*, 309 Ill. App. 3d 720, 724 (1999) ("[T]his court will not become the advocate for, as well as the judge of, points an appellant seeks to raise."). Accordingly, we find that SIB has forfeited review of its due process claim. See *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33 (finding that an issue had been forfeited where appellant did not provide cohesive argument and pertinent authority).

¶ 47 As stated above, a court may not overturn discretionary executive action unless it "contravenes a statute or constitution (or does not comport with the relevant enabling statute)." *Bigelow Group*, 377 Ill. App. 3d at 174-75. Accordingly, this court would not ordinarily second guess the policy decisions or reasoning of the Attorney General in instituting and maintaining a *parens patriae* action. See *id.* at 175 (courts will not inquire into the propriety of the reasoning behind discretionary executive determinations, "so long as the reasoning and decision are not, themselves, illegal"). Here, the Attorney General determined that the best way to promote fairness and efficiency in administering the *parens patriae* settlement was to require that actual purchasers file and verify their claims. As stated, we are not inclined to review the wisdom of the Attorney General's exercise of its discretion. Nonetheless, the record illustrates the benefits of having the actual purchaser substantiate the factual information asserted in the claim.

¶ 48 Among other things, the State specifically argued that, in its experience, allowing claims to be filed and verified by someone other than the purchaser increases instances of mistakes, confusion, or fraud. Although SIB's appeal involves only 6 claims, the record shows that it actually submitted 62—all of which were "verified" by SIB, not the actual purchaser. SIB later rescinded 50 of these claims, after "notic[ing]" that they were "for locations not in IL," and chose not to challenge the denial of six other claims. Had SIB not rescinded these claims, they would have been rejected as noncompliant for lack of filing and verification by the actual purchaser. But without such safeguards, the claims administrator would have expended time and effort auditing at least 50 claims that SIB later admitted were invalid.

¶ 49 Finally, we note that there is no question that SIB and its clients were notified of the *parens patriae* settlement and the claim procedures and were also informed of the opportunity to opt out of the *parens patriae* action if the settlement or its procedures were not agreeable. Instead, SIB seeks to obtain the benefit of the State's *parens patriae* settlement without complying with the requirements placed on all potential participants.

¶ 50    Based on the above, we find no error in the court's denial of SIB's motion to approve its claims, where SIB failed to comply with the court-approved claim procedure.

¶ 51    In light of this conclusion, we need not reach the State's additional arguments, that SIB's claims should not be approved because they remain subject to audit by the claims administrator, because the validity of the assignments still needs to be determined, and because some of the purchasers were not headquartered or incorporated in Illinois. We also need not reach the State's alternative argument that the circuit court abused its discretion in allowing SIB to intervene in the first instance because SIB's petition to intervene was "untimely."

¶ 52    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 53    Affirmed.